## RAILROAD COMPANY v. MAINE.

1. Where two or more corporations, subjected to a special tax upon the net income of their roads, with immunity from other taxation, — the amount of such special tax being dependent upon reports to be made and information communicated by their directors and other officers, — are consolidated into a new corporation, with different directors and other officers, who are neither bound nor able to make the reports and give the information required of the original companies, the new corporation thus created is not entitled to the immunity of the original companies from general taxation.

2. A new corporation may be created by the union of two or more corporations, and its powers and privileges designated by reference to the charters of other companies as well as by special enumeration.

3. The act of the legislature of Maine of 1856, authorizing two or more existing corporations to consolidate and form a new corporation, was an act of incorporation of the new company; and the latter, upon its formation, became at once subject to the provisions of the general law of 1831, which declared that any act of incorporation subsequently passed should at all times thereafter " be liable to be amended, altered, or repealed at the pleasure of the legislature, in the same manner as if an express provision to that effect were therein contained, unless there shall have been inserted in such act of incorporation an express limitation or provision to the contrary." So long as this provision remained unrepealed, subsequent legislation not repugnant to it was controlled by it, and is to be construed and enforced in connection with it.

4. There being in the act of 1856 no limitation upon the power of amendment, alteration,.and repeal, the State, by the reservation in the law of 1831, which is to be considered as if embodied in that act, retained the power to alter it in all particulars constituting the grant of corporate rights, privileges, and immunities to the new company formed under it. The existence of the corporation, and its franchises and immunities, derived directly.from the State, were thus kept under its control. Rights and interests acquired by the company, not constituting a part of the contract of incorporation, stand upon a different footing.

Error to the Supreme Judicial Court of the State of Maine.

An act of the legislature of Maine, passed in 1874, provides for a tax upon the corporate franchise of every railroad company in that State, at the rate of one and one-half per cent upon its estimated value, determined in this wise: The governor and council of the State are each year required to ascertain the true market value of its shares, and estimate therefrom the fair cash valuation of all the shares constituting its capital stock, on the first day of the preceding April. From this valuation are to be deducted the value of its real estate and other property subjected to local taxation, and, where its lines extend beyond the limits of the State, such portion of the valuation as is proportional to the length of that part of the lines lying without the State. Upon the value of the franchise thus determined, the governor and council are to assess the tax; the assessment is to be certified by the secretary of state to the treasurer, and by him notice thereof is to be given to the company. The tax thus assessed is to be in lieu of all taxes on shares of the company previously required by law; and, in case of non-payment, an action will lie for its collection.

The Maine Central Railroad Company was a corporation of Maine in 1875, and the owner of a railroad in the State, and its franchise was assessed and taxed for that year under this statute. It is admitted that the provisions of the act were in all respects complied with, and the required notice of the assessment given to the company. The tax not being paid, the present action of debt was brought for its recovery. The company pleaded in defence that the act of 1874 was in conflict with the provisions of its charter, and also with the Constitution of the State and of the United States, in that it impaired the obligation of the contract contained in the charter. Upon

an agreed statement of facts, the case was submitted to the Supreme Court of the State for its decision. That court gave judgment for the State, sustaining the validity of the tax; and the company brought the case to this court on writ of error.

. The Maine Central Railroad Company was originally formed in October, 1862, by the consolidation of two distinct corporations, — the Androscoggin and Kennebec Railroad Company, which was incorporated in March, 1845, and had constructed a railway from Waterville to Danville; and the Penobscot and Kennebec Railroad Company, which was incorporated in April, 1845, and had constructed a railway from Bangor to Waterville.

· The charter of each company required it to keep a regular account of its disbursements, expenditures, and receipts, in a book, which was to be open at all times to the inspection of the governor and council, and any committee of the legislature; and required its treasurer, at the expiration of every year, to make, under oath, an exhibit to the legislature of the net profits derived from the income of its road. It also provided that the real estate of the company should be taxable by the towns, cities, and plantations in which it lay, in the same manner as that of private persons, and its value be estimated in the same way; that the shares of the stockholders should be deemed personal estate, taxable to them at their places of residence; and that whenever the annual net income of the company amounted to ten per cent upon the cost of the road and "its appendages, and incidental expenses," the directors should make a special report of the fact to the legislature, "from and after which time" one moiety, or such other portion as the legislature might determine, of the net income accruing thereafter, above the ten per cent, first to be paid to the stockholders, should annually be paid by the treasurer of the corporation, as a tax, into the treasury of the State. It also declared that no other tax should ever be levied or assessed on the corporation, or any of its privileges or franchises, and that the charter should " not be revoked, annulled, altered, limited, or restrained, without the consent of the corporation, except by due process of law."

The consolidation of these two companies into the Maine Central Railroad Company was effected under an act passed in

April, 1856, which authorized it upon the agreement of their directors, approved by the stockholders, prescribing the terms and conditions thereof, the mode of carrying the same into effect, the name of the new corporation, the number of its directors, the time and place of holding the first election, the amount of its capital, the number of shares of stock, and the manner of converting the shares of the capital stock of each of the corporations into those of the new corporation; and filing a duplicate or counterpart of the agreement in the office of the secretary of state. Immediately afterwards, upon the election of the directors, the corporations making the agreement were to be consolidated, and, together, to constitute a new corporation, by the name therein mentioned. The act provided that the new corporation thus formed should have "all the powers, privileges, and immunities" possessed by each of the corporations entering into the agreement, and be subject to all the legal obligations then resting upon them respectively; with a proviso, however, that it should not be construed as extinguishing the old corporations or annulling their charters, but that they should be "regarded as still subsisting, so far as their continuance for the purpose of upholding any right, title, or interest, power, privilege, or immunity, ever possessed, exercised, or enjoyed by either of them may be necessary for the protection of the creditors or mortgagees of either of them, or of such new corporation; the separate exercise of their respective powers and the separate enjoyment of their respective privileges and immunities being suspended until the protection of such creditors or mortgagees shall require their resumption, when such suspension shall cease, so far and for such time as the protection of such creditors or mortgagees may require."

Some years after this consolidation, by a law passed in 1873, three other railroad companies, whose roads were at that time under lease to the Maine Central Railroad Company, were allowed to consolidate with it, upon the same terms and conditions prescribed by the act of 1856, so far as they were applicable; and such second consolidation was effected in 1874. These three companies were the Portland and Kennebec Railroad Company, which owned a railroad from Augusta to Portland; the Sommerset and Kennebec Railroad Company, which

had constructed a railroad from Skowhegan to Augusta; and the Leeds and Farmington Railroad Company, which owned a railroad from Farmington to Leeds Junction.

The first of these three companies was formed by holders of bonds of the Kennebec and Portland Railroad Company, a corporation created in 1836, and, by the act of 1845, possessed of a similar conditional immunity from taxation to that of the two companies first consolidated. By authority of the legislature, this company had issued its bonds, secured by mortgage upon its road and franchise. In 1862, the mortgage was foreclosed, and the present corporation formed. The new corporation was, by statute, invested with the legal rights and immunities of the original corporation. It is admitted that the charters of the other two of these three corporations contained no limitation upon the taxing power of the State.

It is upon the franchise of the Maine Central Company, as formed in 1874, upon the second consolidation, that the tax was assessed and levied for which this action was brought.

An act of the legislature of Maine, passed in 1831, c. 503, contained the following provision: —

"All acts of incorporation, which shall be passed after the passage of this act, shall at all times hereafter be liable to be amended, altered, or repealed, at the pleasure of the legislature, in the same manner as if an express provision to that effect were therein contained, unless there shall have been inserted in such act of incorporation an express limitation or provision to the contrary."

Judgment was rendered in favor of the State, and the company sued out this writ of error.

*Mr. Josiah H. Drummond* for the plaintiff in error.

1. The legislature has the power, by contract, to exempt a person or corporation from taxation, and no subsequent legislature can repeal the exemption. Cooley, Taxation, 55; *New Jersey v. Wilson*, 7 Cranch, 164; *Gordon v. Appeal Tax Court*, 3 How. 133; *Piqua Branch of State Bank of Ohio v. Knoop*, 16 id. 369; *Ohio Life Insurance & Trust Co. v. Debolt*, id. 416; *Dodge v. Woolsey*, 18 id. 331; *Mechanics', &c. Bank v. Thomas*, id. 384; *Jefferson Branch Bank v. Skelly*, 1 Black, 436; *McGee v. Mathis*, 4 Wall. 143; *Von Hoffman v. City of*

*Quincy,* id. 535; *Home of the Friendless* v. *Rouse,* 8 id. 430; *Washington University,* v. *Rouse,* id. 439; *Wilmington Railroad* v. *Reid,* 13 id. 264; *Raleigh & Gaston Railroad Co.* v. *Reid,* id. 269; *Tomlinson* v. *Jessup,* 15 id. 454; *Tomlinson* v. *Branch,* id. 460; *Humphrey* v. *Pegues,* 16 id. 244; *The Delaware Railroad Tax,* 18 id. 206; *Pacific Railroad Co.* v. *Maguire,* 20 id. 36; *Erie Railway Co.* v. *Pennsylvania,* 21 id. 492; *Bailey* v. *Magwire,* 22 id. 215; *Central Railroad, &c. Co.* v. *Georgia,* 92 U. S. 665; *Branch et al.* v. *City of Charleston et al.,* id. 677.

This power, when the charters of the consolidating companies were granted, or when any of the acts in addition thereto, or under which the plaintiff in error claims any rights, were passed, was not limited by any provisions of the Constitution of Maine.

2. The plaintiff in error has a valid subsisting contract in its charter, in relation to the manner in which it shall be taxed. The two companies first consolidated into the Maine Central were, by their charters of 1845, subjected only to a tax upon the net income of their roads, to be ascertained in a prescribed manner, over and above ten per cent first paid to their stockholders; and their charters declared that no other tax should ever be levied or assessed upon the corporations, or any of their privileges or franchises.

The act of 1874 authorizes, in terms, a tax "upon the corporate franchise" of the Maine Central Company; and it is admitted that such a tax is other than the one provided in the charters of the two consolidating companies. The act of consolidation of 1856, under which the Maine Central was formed, provided that it should have "all the powers, privileges, and immunities" possessed by each of the consolidating companies; and thus the question arises, whether the act of 1874 overrides and controls this exemption; if it does not, the judgment below must be reversed.

3. The charters of the consolidating companies were not controlled by the act of 1831, for they contain a provision that they "shall not be revoked, annulled, altered, limited, or restrained, without the consent of the corporation, except by due process of law;" and no specific reference to that act was necessary. It is claimed by the State that that act does apply, as there is no

express exemption from it contained in the act of 1856, which, it is insisted, was an act of incorporation accepted by the company.

We answer, that the act of 1831 is limited, in its effect, to "acts of incorporation;" and that the act of 1856 was not an "act of incorporation," within the meaning of the term in the act of 1831.

An act of incorporation was then understood to be the granting of a franchise by the State to a body created by its authority, and was called a charter.

The act of 1856 does not create a body corporate, but merely authorizes two existing bodies corporate to unite in one; nor does it grant a franchise, but merely provides that, by the consolidation, their franchises shall thereby, *eo instanti*, be transferred to and vested in the consolidated corporation.

It is true that the act uses the term "new corporation," but it uses the term to distinguish the consolidated corporation from those composing it. In that limited sense, but not in the legal sense, it is a new corporation.

4. The present charter of the Maine Central Railroad Company consists of the several charters of the original companies, which are now merged into the present company. Its rights, powers, and privileges, as to any particular portion of its railroad, must be determined from these charters, and not from the consolidating act. Such has been the uniform decision of this court, as is shown by the cases already cited.

In *Chesapeake, &c. Railroad Co.* v. *Virginia* (94 U. S. 718), the court says (p. 725), in effect, that it has been settled by its repeated decisions, that when two companies consolidate, with all the rights, privileges, and immunities of each, and one had an exemption and one had not, the consolidated company takes the one with the exemption, and the other without, — a doctrine expressly in conflict with the right of the State to the tax in question.

If the immunity from taxation, therefore, now claimed originally existed, and was not affected by the consolidation of 1862, it was not impaired by the consolidation of 1874. See also *The Delaware Railroad Tax Case*, 18 Wall. 206, and *Central Railroad, &c. Co.* v. *Georgia*, 92 U. S. 665.

*Mr. Lucius A. Emery*, Attorney-General of Maine, *contra.*

1. The Maine Central Railroad Company, which came into existence in 1862, was not a revival nor a continuation of the consolidating corporations. By the very terms of the act of 1856 creating it, it was a new corporation with a different name, and it was to have a separate board of directors. All the rights, franchises, and property of the old corporations were "transferred to and vested in" it. Its distinct and independent existence is made apparent by the fourth section of the act, which provides that the old corporations shall still retain an existence, though in an attenuated form, for the purpose of . protecting their respective creditors. Although it was not, in fact, organized until 1862, nevertheless, the sole source of and authority for its existence was that act. Assuming that the act can be repealed, the simple words, "the act of 1856 is hereby repealed," would dissolve this new corporation. Its franchises were conferred upon it, not by the old companies, but by the legislature. The old corporations were incorporated in 1845; the new one, in 1856. The old corporations gave up their rights, property, and franchises, and had no existence for active duties. Their organization was gone. They had neither president nor directors. They surrendered their respective charters. Their franchises returned to the legislature which gave them, and were granted by it to the new corporation. The latter was a new birth, without the sin of exemption from taxation. This view is sustained by the authorities. See *State* v. *Sherman*, 22 Ohio St. 411; *McMahan* v. *Morrison*, 16 Ind. 172; *Clearwater* v. *Meredith et al.*, 1 Wall. 25.

2. The new corporation became at once subject to the act of 1831, which is an essential provision of every subsequent act of incorporation, and is as much a part of the act of 1856 as if it were therein specially set forth. The right of the legislature to annul or repeal such subsequent act is, therefore, unquestionable, unless it contains "an express limitation or provision to the contrary." The limitation must be expressed, directly . and in terms.

3. Every presumption will be indulged against the intention of the legislature to surrender the power of taxation. The

language in which the asserted surrender is made must be clear and unmistakable. *Erie Railway Co.* v. *Pennsylvania*, 21 Wall. 492; *Tucker* v. *Ferguson et al.*, 22 id. 527; *Bailey* v. *Magwire*, id. 215; *St. Louis* v. *Boatman's Insurance & Trust Co.*, 47 Mo. 155.

4. The legislature could not have intended to exempt the plaintiff in error from taxation. When it provided a specific mode of taxation for the Androscoggin and Kennebec Company, and the Penobscot and Kennebec Company, and covenanted never to tax them in any other way, it imposed on them certain duties. The directors of each corporation were required to keep accounts of the expenses and earnings of its road, and make a special report to the legislature when the earnings were ten per cent per year upon the cost. If the directors neither could nor would do this, the company would be obliged to submit to some other form of taxation. So of the treasurer. Now, each of these corporations of 1845 having surrendered its franchise to the legislature, and given up its organization, has neither directors nor a treasurer to make report and pay over. Each, so long as it stood ready to perform the prescribed duties, was entitled to this exemption, and lost it the moment it incapacitated itself from performing them.

Mr. Justice Field, after stating the facts, delivered the opinion of the court.

The principal question for our determination is whether the conditional and limited taxation, to which the two original companies first consolidated were subjected, is extended to the present corporation defendant after its second consolidation. As the act of 1856, authorizing the first consolidation, conferred upon the new corporation "all the powers, privileges, and immunities" possessed by each of the consolidating companies, and the act of 1873, by reference, adopts the same provisions, it is contended that the new company is exempt from any other taxation than that to which they were subjected, at least, that so much of the road of the company as originally belonged to those consolidating companies is thus exempt.

It is not questioned by counsel on either side that the charter of a private corporation is a contract between the State and its corporators, and protected under the Constitution of the United

States, like any other contract, from legislation impairing its obligation. This has been so often decided, that its statement is only the repetition of an admitted legal principle. The only question for serious inquiry, where legislation affecting the charter is the subject of complaint, is whether it does in fact impair the obligation of the contract; for there may be legislation touching the powers of the corporation which will not have that result. Nor is it questioned by counsel that the taxation, both in its mode and extent, may be so prescribed in the charter as to preclude any subsequent interference by the State with either. Repeated decisions of this court have so adjudged; though the right of one legislature to bind its successors in the exercise of its power of taxation, which is an essential attribute of sovereignty, has met with frequent earnest dissent from a minority of the court.

The provision in the charters of the two original companies was a clear conditional limitation upon the power of the State to tax them. Language could not be made more direct and positive. Only upon the annual net income received from the roads of the companies bove the ten per cent paid to the stockholders could a tax be imposed by the State, and then only a portion of such net income could be exacted. " No other tax," said the charter, should ever be levied or assessed on the corporations, or any of their privileges or franchises. So long as these companies were distinct corporations, only the tax thus prescribed could be imposed upon them. But, when they were merged in the new corporation, their distinct corporate existence ceased, except so far as their existence might be necessary for the protection of their creditors or mortgagees, or those of the new corporation. The conditions upon which the limitation of taxation was prescribed could be performed only while the companies were distinct corporations operating separate lines. Those companies only were required to keep an account of their disbursements, expenditures, and receipts, for the inspection of the governor and council, and committees of the legislature. Their treasurers only were bound to render to the legislature, at the expiration of every year, exhibits under oath of the net profits of their roads. Their directors only were called upon to make a special report to the legislature,

whenever their annual income amounted to ten per cent upon the cost and expenses of their roads. It was only upon such report that the legislature was to determine the portion of the income which should be received in lieu of other taxes. The new company was subject to no such duty of keeping an account of the expenditures and receipts of the original lines; its directors were not called upon to make any report as to the income of such lines; nor was its treasurer required to make any annual exhibit of the net profits derived from them. The assets of all the companies were intermingled; and continuous trains were run over the whole length of the several roads. It would have been impossible to show what would have been the profits of each road without the consolidation. Only an approximation to them would have been attainable; and that would have been based upon estimates more or less speculative in their character.

The consolidation of the original companies was a voluntary proceeding on their part. The law made it dependent upon their agreement; and that law was presumably passed upon their request, as they are named in it, and they acted under it. Having thus disabled themselves from a compliance with the conditions, upon the performance of which the amount to be paid as a tax to the State could be ascertained, they must be considered as having waived the exemption dependent upon such performance. Their exemption was qualified by their duties, and dependent upon them. They incapacitated themselves from the performance of those duties by a proceeding which they supposed would give them greater advantages than they possessed in their separate condition, and they thus lost their exemption. The new company was not charged with the duties which they were to perform to the State, and by which the State was to be governed in its taxation, nor was the State under any obligation to accept a substituted performance from other parties.

The provision in the act authorizing the consolidation, that the new company should have all the powers, privileges, and immunities of the original companies, must, therefore, be taken with the qualification that it should have them so far as they could be exercised or enjoyed by it, with its different officers

and distinct constitution. Where their exercise or enjoyment required other officers or a different constitution, the grant was to that extent necessarily inoperative.

The Maine Central Railroad Company was, upon the consolidation of the original companies, a new corporation, as distinct from them as though it had been created before their existence. The fact that the powers, privileges, and immunities which they had possessed were conferred upon the new company, so far as they could be exercised or enjoyed by it, in no respect affected its character as a distinct body. A new corporation may be as readily created by the union of two or more corporations as by the union of individuals; and its powers and privileges may as well be designated by reference to the charters of other companies as by special enumeration.

It follows that the limitation of the taxing power of the State to a portion of their net income prescribed in the charters of the old companies ceased upon their consolidation into the Maine Central. When this new company came into existence, it became subject to the provisions of the general law of 1831, which declared that any act of incorporation subsequently passed should at all times thereafter " be liable to be amended, altered, or repealed, at the pleasure of the legislature, in the same manner as if an express provision to that effect were therein contained, unless there shall have been inserted in such act of incorporation an express limitation or provision to the contrary." Although this provision could not bind any succeeding legislature which might choose to disregard it, so long as it remained unrepealed, subsequent legislation not repugnant to it was controlled by it, and must be construed and enforced in connection with it. There was no limitation in the act authorizing the consolidation, which was the act of incorporation of the new company, upon the legislative power of amendment and alteration, and, of course, there was none upon the extent or mode of taxation which might be subsequently adopted. By the reservation in the law of 1831, which is to be considered as if embodied in that act, the State retained the power to alter it in all particulars constituting the grant to the new company, formed under it, of corporate rights, privileges, and immunities. The existence of the corporation, and

its franchises and immunities, derived directly from the State, were thus kept under its control. Rights and interests acquired by the company, not constituting a part of the contract of incorporation, stand upon a different footing. But no such rights or interests are here involved. *New Jersey* v. *Yard*, 95 U. S. 104; *Tomlinson* v. *Jessup*, 15 Wall. 454.

The several cases cited by counsel from the decisions of this court, upon the effect of consolidating several companies where some of them possess an immunity from taxation, do not militate against the views here expressed. They are *The Delaware Railroad Tax*, 18 Wall. 206; *Central Railroad & Banking Co.* v. *Georgia*, 92 U. S. 665; and *Chesapeake & Ohio Railroad Co.* v. *Virginia*, 94 U. S. 718. In the Delaware Railroad Tax Case, it appeared that three companies — one of which owned a railroad in Pennsylvania, one a railroad in Maryland, and one a railroad in Delaware — were consolidated into one company under the legislation of those States. The act of the legislature of Delaware declared that the respective companies should constitute one company, and be entitled to all the rights, privileges, and immunities which each and all of them possessed and enjoyed under their respective charters; and one of those charters, which was granted by Maryland, had exempted the shares of the capital stock of its company from taxation. It was held that the provision in the Delaware act in no respect affected its power of taxation upon the property of the new company in that State; that the new company stood in each State as the original company had previously stood in that State, invested with the same rights and subject to the same liabilities; and that it was not the intention of either State to enforce within its limits the legislation of the other. This decision has no bearing upon the questions involved in the present case.

In *Central Railroad & Banking Co.* v. *Georgia*, it was held that the consolidation of two railroad companies did not necessarily work a dissolution of both and the creation of a new corporation; that whether such would be its effect depended upon the legislative intent manifested in the statute under which the consolidation took place; that, in the case under consideration, the two companies there mentioned were

not dissolved by their consolidation; that the consolidated company continued to possess all the rights and immunities which were conferred upon each company by its original charter; and, inasmuch as one of the companies was exempted from liability to any greater tax than one-half of one per cent of its net annual income, the exemption continued after the consolidation. The State, in that case, claimed that a new company was the result of the consolidation, and that its charter was then subject to repeal or modification, at the will of the legislature. The court replied, that if the charter of the company having the exemption had been surrendered, and a new corporation created by the consolidation, the consequences claimed by the State " might and probably would follow." There is nothing in this decision which touches the case at bar.

In *Chesapeake & Ohio Railroad Co.* v. *Virginia*, it was held that a railroad corporation, formed under an act of the legislature by the consolidation of existing companies, and " vested with all the rights, privileges, franchise, and property which may have been vested in either company prior to the act of consolidation," acquired no greater immunity from taxation than had been severally enjoyed by the original companies as to the portions of the road belonging to them, and that whatever property had been subject to taxation previous to the consolidation remained so afterwards. This decision has no application to the questions involved in the case before us. In none of these cases were duties required of the original companies and their directors and officers, which could not have been equally discharged by the new companies, nor was the extent or mode of taxation made dependent upon information to be imparted by officers who, upon the consolidation of the companies, had ceased to exist.

We have in this opinion made no reference to the charters of the three railroad companies which were consolidated with the Maine Central Company in 1874. It is admitted that the charters of two of them contained no limitation upon the taxing power of the State. The third company, incorporated in 1836, obtained, by an act passed in 1845, a conditional exemption from taxation, like that in the charters of the two companies in the first consolidation. A mortgage upon its road and

franchise was, in 1862, foreclosed by the mortgagees, who acquired the property and formed a new corporation. This new corporation was, by the statute which authorized it, declared invested with the legal rights and immunities of the original corporation. When it afterwards consolidated with the Maine Central, its rights and immunities passed to that company, only to the extent and subject to the same limitations as those of the original two companies.

It follows that there is no error in the judgment of the Supreme Court of Maine; and it is, therefore,

*Affirmed.*

MR. JUSTICE STRONG dissented.