## No. 10,045.

### THE BOARD OF ADMINISTRATORS OF THE CHARITY HOSPITAL OF NEW ORLEANS vs. THE NEW ORLEANS GAS LIGHT COMPANY.

The legal effect of the consolidation of two corporations under the provisions of Act No. 157 of 1874 is a perfect amalgamation which terminates the existence of the consolidating companies as separate autonomies and operates the creation of a new one, thus concentrating in one corporation, the members, the property and the capital stock of both.

The consolidated corporation not only assumes duties and obligations similar to those of the former corporations, but it will be held on the very identical liabilities and obligations incurred by either of the former companies.

Hence, under the amalgamation effected between the New Orleans Gas Light Company and the Crescent City Gas Light Company, the obligation imposed by the Legislature on the former company to furnish gas, free of charge, to the Charity Hospital, adheres to the new or consolidated company, without reference to the term or duration of the charter of said company as previously composed.

APPEAL from the Civil District Court for the Parish of Orleans.
*Houston,* J.

---

*Farrar & Kruttschnitt* and *S. S. Carlisle* for Plaintiff and Appellant:

1. The obligation to furnish free gas to the Charity Hospital was, by the Act of 1845, made one of the conditions of the charter of the New Orleans Gas Light Company.

2. The consolidation of that company with the Crescent City Gas Light Company was not a merger or union, but a "perfect amalgamation." Fee vs. Gas Co., 35 Ann. 416; N. O. Gas Co. vs. La. Light Co., 115 U. S. 697.

3. The legal effect of this perfect amalgamation was to "terminate the existence of the original corporations, to create a new corporation, to transmute the members of the former into the members of the latter, and to operate a transfer of the property, rights and liabilities of each old company to the new one". Fee vs. Gas Co., *supra.*

4. The charter of the New Orleans Gas Light Company, therefore, never did expire by limitation. It expired before the arrival of the term, because it took the benefit of a legislative act, the effect of which was a termination of its charter upon the condition that the new being, to the formation of whose existence it contributed, should be bound by all of the conditions and obligations imposed in its charter.

5. The litigation between the New Orleans Gas Light Company and the Crescent City Gas Light Company as to the constitutionality of Act 66 of 1860 is not binding on the Charity Hospital, who was no party thereto, though having an interest exceeding $60,000 in the result.

6. The consolidation between the parties litigant prior to the final decree, makes the judgment in that case a mere consent judgment, binding only on the parties.

7. Being no party to that litigation, the Charity Hospital is entitled to discuss now the constitutionality of Act No. 66 of 1860, if it has any bearing on its rights.

8. The defendant is estopped from setting up that said act is unconstitutional. It is bound by all the estoppels that either of its constituent members were bound by; and the New Orleans Gas Light Company, having accepted the provisions of said act and complied with its terms, cannot be heard to say that the same is unconstitutional.

9. The object of that act is expressed in its title, and is declared to be "to extend the area of gas lighting in the city of New Orleans, and to reduce the price now paid by consumers."

10. Under the then existing contract relations between the State and the New Orleans Gas Light Company this expressed object could not be accomplished without the consent of that company, and without making to it some compensation for the invasion of its chartered privileges contemplated by the object of the act.

11. The extension of the charter of that company for twenty years, in consideration of its consent to perform the onerous duties necessary to enable it to realize the object of the Legislature, was the natural, reasonable, appropriate and efficient means adopted by the Legislature for the accomplishment of that object.

12. It is not necessary that the title to an act should specify or enumerate the means adopted by the Legislature to accomplish the object stated. Hammond vs. Lesseps, 31 Ann. 330; American Printing House vs. Dupuy, 37 Ann. 191

13. The reasoning of the Court in the case of Crescent City Gas Light Company vs. New Orleans Gas Light Company, 27 Ann. 144, begs the question and does not discuss the real issue. It is, therefore, without weight in the determination of the rights of the plaintiff.

*Braughn, Buck, Dinkelspiel & Hart* for Defendant and Appellee.

The opinion of the Court was delivered by

Poché, J.   The issue involved in this case is the alleged obligation of the defendant company to furnish gas, free of expense, to the Charity Hospital.

Plaintiffs rest their demand on the provisions of Act 100 of 1845, which amended the charter of the New Orleans Gas Light Company, as then composed, and by which the company was required to furnish the Hospital all the " gas and fixtures necessary for lighting the same free of charge." Hence, they aver that the legislative requirement followed the company in the act of consolidation and amalgamation between it and the Crescent City Gas Light Company on the 29th of March, 1875, effected under the authority of Act 157 of 1874, authorizing the consolidation of corporations in this State, by means of which the defendant company, as at present organized, came into legal existence.

Its resistance is predicated on the fact that, under the effect of the legislation of 1845, the charter of the previous New Orleans Gas Light Company expired on the 1st of April, 1875, and that with it was extinguished the obligation of the present company to furnish gas, free of charge, to the Charity Hospital.

Plaintiffs prosecute this appeal from an adverse judgment.

It appears that, after the act of consolidation, until January, 1886, the consolidated company continued the free supply of gas to the hospital, but on the 19th of January, of that year, it was resolved by the Board of Directors that in the future, the Charity Hospital would be charged regular price for the gas consumed by it; hence, this suit, which was begun by an injunction for the purpose of restraining the defendant from cutting off the free gas supply.

The controversy hinges upon a proper construction of the legal effect of the act of consolidation between the two previously existing companies.

As bearing on the issues to be discussed must be noted the incorporation of the Crescent City Gas Light Company, by an act of the Legislature, No. 97 of 1870, as amended by Act 106 of 1873, by means of which legislation the company thereby created was granted the sole and exclusive privilege of making and vending gas lights in the city of New Orleans for a term of fifty years, after the date of the expiration of the charter of the New Orleans Gas Light Company, as then existing, and which, under its charter, was in the exercise of the exclusive privilege to supply gas to the people and city of New Orleans.

But, in the meantime, the Legislature, by Act No. 66 of 1860, had extended the charter of the New Orleans Gas Light Company to the 1st of April, 1895; and its provisions clashed with the legislation of 1870 and 1873 in favor of the Crescent City Gas Light Company. Hence, arose litigation between the two companies, in which a decision was rendered by this Court declaring that the Act No. 66 of 1860 was unconstitutional.

While a writ of error, taken from that decision, was pending in the Supreme Court of the United States, the two companies entered into a compromise, resulting in the dismissal of the writ, and culminating in the consolidation of the 29th of March, 1875, hereinabove referred to.

The Act No. 157 of 1874, under which the consolidation was effected, reads as follows :

"Any two business and manufacturing corporations or companies, now existing under general or special law, whose business and objects are in general of the same nature, may amalgamate, unite and consolidate said corporations or companies, and form one consolidated company, holding and enjoying all the rights, privileges, powers, franchises and property belonging to each, and under such corporate name as they may adopt or agree upon ; such consolidation shall be made by agreement, in writing, by or under the authority of the board of directors, and with the assent of the owners of at least three-fifths of the capital stock of each of said corporations or companies, and a certificate of the fact of such consolidation with the name of the consolidated company shall be filed and recorded in the office of the Secretary of State; provided, that no such consolidation shall in any manner affect or impair the right of any creditors of either of said companies. In the agreement of consolidation, the number of directors of the consolidated company shall be specified and the capital stock may be in the amount agreed upon by the companies or corporations, and set forth in the articles of consolidation."

It is not disputed by the defendant company that, as a legal result of the amalgamation, the obligation theretofore resting on the New Orleans Gas Light Company to supply gas, free of charge, to the Charity Hospital adhered to the consolidated company, but the contention is that the obligation was only co-equal with the duration of the charter of the company which was burdened with that duty, and that, therefore, the obligation became extinct on the 1st of April, 1875, at which time the charter of that company is alleged to have expired.

That conclusion is predicated on the proposition that the consolida-

tion of the two previous companies operated merely a merger of one
of the corporations into the other, and that the measure of the rights,
privileges and franchises or vitality infused in the consolidated com-
pany by each of the consolidating corporations was the respective
terms of duration of the charter of each.

But that argument finds no support either in the facts of the case
or in well settled jurisprudence on the question of the effects of an
amalgamation of two distinct and co-existing corporations.

In dealing with the question of the legal effects of the consolidation
of the identical companies now under discussion the Court said:

" The articles of consolidation and the legislative act, by authority
of which they were executed, evidently present a case of complete
and perfect amalgamation, the effect of which was, under American
authorities, to terminate the existence of the original corporations, to
create a new corporation, to transmute the members of the former into
members of the latter, and to operate a transfer of the property,
rights and liabilities of each old company to the new one." Fee vs.
Gas Company, 35 Ann. 416.

That opinion was sanctioned both by reason and by the nature of
the act by which the consolidation had been authorized, as well as by
the highest judicial authority in the land.

The principle had been announced by the Supreme Court of the
United States on several occasions, and was in one of its adjudica-
tions couched in the following language:

" The effect of the consolidation was a dissolution of the three
corporations, and at the same instant the creation of a new corpora-
tion, with property, liabilities and stockholders derived from those
passing out of existence." Clearwater vs. Meredith, 1st Wallace, p.
40.   These views were repeatedly re-affirmed by that exalted tribunal.
Shields vs. Ohio, 95 U. S., 'p. 323; Railway Company vs. Maine, 96
U. S. 510; Railroad Company vs. Georgia, 98 U. S. 362.

It may not be amiss to add that our views on this question in the
Fee case, 35 Ann. 416, were quoted with approval, and made the basis
of its reasoning by the Supreme Court of the United States in the case
of the New Orleans Gas Company vs. the Louisiana Light and Heat
Producing and Manufacturing Company, 115 U. S. p. 697.

On the same subject, Taylor on the Law of Corporations, Sec. 425,
uses the following language: " On the other hand, the consolidated
corporation not only assumes duties and obligations similar to those
of the former corporations, but as a general rule, will be held on the

very identical liabilities and obligations incurred by either of the former companies."

The same principle is dealt with by Field on Corporations, Sec. 435, as follows: "And the general rule is that the rights of creditors vs. the old companies revive against the new one created by the consolidation, as we have just noticed, and that it becomes substitute for the former; provision is made, perhaps generally made, by statute or by articles of agreement, as provided by law, for the payment of the creditors and the satisfaction of the old obligations of the consolidating companies, *but even where no such provision is made, but the same consolidation is consummated lawfully, the new company has been held liable to all obligations of the former ones, to the very necessity of the case and to prevent the failure of justice.*"

Our reading of the act of 1874 authorizing the consolidation of corporations and of the articles of agreement adopted under its authority by the two original companies which were consolidated on the 29th of March, 1875, has satisfied us that both were conceived, drafted and adopted under the guidance of the very expositions of the principle to which we have herein referred to, and that, therefore, the same legal effects must flow from the amalgamation out of which the present defendant sprang into legal existence.

Hence, we cannot adopt the reasoning which would measure the consolidated powers, privileges or obligations of the present new company by reference to the term of duration of the charters of the former companies. And we hold now, as we did in the Fee case (35 Ann. 416), that the charters of the two former companies terminated their existence on the 29th of March, 1875, and that all the powers, rights, liabilities and vitality which both possessed at that very moment were infused and incorporated into the new company which was then born of the amalgamation.

The very legal existence of the defendant company hangs upon the vivifying breath of that legal creation.

It seems quite natural for the defendant, in its present attitude, to continue to draw the breath of life from the new being created out of the union of its parents who ceased to exist at its birth, while it unnaturally repudiates the essential conditions legally imposed on its creation.

Under the articles of agreement, and as a result or the amalgamation, the consolidated company became the owner, and went into possession of all the gasworks, machinery, main-pipes, service-pipes, meters, lamps and all other property then in use for the business of

gas manufacture and distribution, including all real estate (with one exception) then belonging to the former New Orleans Gas Light Company, and it is yet the undisputed owner of all that property. Should any one, for instance some dissatisfied stockholder of that former company, seek to disturb its possession and enjoyment of that property, he would be triumphantly met by a reference to the act of amalgamation. But, in defendant's opinion, the same rule does not apply when it is called on to comply with an obligation which then attached as an essential legal condition of the very existence of one of the authors of its being under the law. To such a demand the answer is that the obligation was cancelled by the expiration of the charter of the former company.

The law cannot and will not tolerate such a course. Through the same channel which led the defendant company to the right of ownership of all the property and rights of the former New Orleans Gas Light Company, it must be led and coerced to the discharge of the obligations which had been imposed on its author by the law which had created it and which authorized the organization of the new company.

That position cannot be successfully assailed by a consideration of the opinion of this Court in the 27th of Annuals which declared the unconstitutionality of the act of 1860, which purported to extend the charter of the former New Orleans Gas Light Company to 1895. That decision was rendered in February, 1875, and the amalgamation was effected in March following, and the measure was adopted as a compromise of the possible effects of the decision. By that compromise all advantages resulting from that decision in favor of the Crescent City Company, were in fact, if not formally, waived. Under the effect of the writ of error taken from this to the Supreme Court of the United States, the decree in the case was not yet final between the parties when they agreed to abate the litigation.

On this point the record contains the following statement: "It is further agreed that from the judgment rendered by the Supreme Court of the State in the case of The Crescent City Gas Light Company vs. The New Orleans Gas Light Company, a writ of error was prosecuted by the New Orleans Gas Light Company to the Supreme Court of the United States, and that said writ of error, in consequence of the agreement of consolidation between the two companies, was dismissed by consent of parties."

It is thus made clear that the judgment was not final when the consolidation was effected, and the conclusion is warranted that *quoad*

the amalgamation, the judgment thus rendered and suspended, must have been entirely ignored, and cannot now be considered.

That conclusion is removed beyond the possibility of a doubt by many features which were embodied in the articles of agreement or amalgamation.

Among others we note the following :

The capital stock of the consolidated company was fixed at $10,000,000, of which $3,750,000, or 37,500 shares of $100 each were considered as paid up. Now, out of those, 25,000 shares were distributed *pro rata* to the holders of 19,800 shares of $100 each, which represented all the stock previously issued by the N. O. Gas Co. ; and the remainder, only 12,500 shares, was allotted to the holders *pro rata* of 30,000 shares of $100 each, issued to that date by the Crescent City Gas Co.

It was also stipulated that the holders of the 19,800 shares of N. O. Gas Light Co. were to receive a dividend of 6 per cent on July 1, 1875, while no dividend was to be paid to the stockholders of the Crescent City Co. before the 1st of January, 1876.

Again, the whole force of employees, including the President and Board of Directors of the New Orleans Gas Light Company, were retained to manage and control the new company until the second Tuesday of July, 1875.

Would the Crescent City Gas Light Company, holding a charter good for fifty years, have made such concessions, and granted such and other similar advantages in a contract of amalgamation, to a company whose legal existence was, to the knowledge and belief of both of the contracting parties, to have terminated within three days?

The judicial mind cannot be strained to the extent of believing a condition of things so much at variance with all springs of human action.

We therefore conclude and we hold that, the obligation to furnish gas, free of charge, to the Charity Hospital adheres to the consolidated company.

The views thus reached leave but one question open to discussion, and that is to determine the length of time during which the obligation will continue.

The considerations which led us to the conclusion that the duty in question adhered to the new company after the 1st of April, 1875, even under defendant's contention to the contrary, logically lead to the conclusion that it will exist as long as the consolidated corporation

will continue to operate under the authority of the amalgamation and of the law which sanctioned it.

Its effect, as we said in Fee's case, was to terminate the separate existence of the former corporations, and " to transmute the members of the former into members of the latter, and to operate a transfer of the property, rights and liabilities of each old company to the new one."

Nothing suggests a difference between the results of a perfect amalgamation in law, and those produced by an amalgamation in physical science.

As is the case with the latter, in an amalgamation in law, all the parts of the component matters or things to be subjected to amalgamation, must enter in the formation of the new being or matter to be thus produced. And the amalgamation, in order to be and remain complete as intended, must continue to combine all the parts or elements from which the new being had been formed.

The subsequent withdrawal from the amalgamation of any of its component parts would destroy, or at least alter its autonomy.

Thus, in the instant case, the property, rights and liabilities of the former New Orleans Gas Light Company, must continue as component parts of the amalgamated company, or otherwise the latter's autonomy would be changed into a new or different corporation. After the 1st of April, 1895, the property and franchises of the old N. O. Gas Light Company will remain in the consolidated company just as they existed and were transferred on the day of the amalgamation. As a component part of the new corporation the old company is estopped from averring a limit to a transfer, which was not stipulated in the contract, and its original stockholders are forever debarred from setting up any claim in their original capacity to any of the property, or rights which were thus vested in the new company.

Treating of the legal effect of a similar amalgamation, the Supreme Court of the United States used the following language, which is quite in point on the present discussion :

" Looking thus at the legislative intent appearing in the consolidation act, we are constrained to the conclusion that a new corporation was created by the consolidation effected thereunder in the place and lieu of the two companies previously existing, and that whatever franchises, immunities or privileges it possesses it holds them solely by virtue of the grant that act made. That generally the effect of consolidation, as distinguished from a union by merger of one company into another, is to work a dissolution of the companies consolidating, and to create a new corporation out of the elements of the

former, is asserted in many cases, and it seems to be a necessary result." 98 U. S., p. 363, Railroad Co. vs. Georgia.

In our opinion there is no possible escape for defendant from the relief claimed by plaintiffs.

The judgment appealed from is therefore reversed, and it is ordered and decreed, that the preliminary writ of injunction issued herein be perpetuated, that the New Orleans Gas Light Company, defendant herein, is obliged to furnish gas, free .of charge, to the Charity Hospital of New Orleans, as long as said company shall continue to operate under its present organization, and that said defendant pay all costs in both courts.

Rehearing refused.

### Concurring Opinion in Part.

Fenner, J. The Act No. 157 of 1874 undoubtedly authorized the consolidation of the Crescent City and the New Orleans Gas Light Companies; and the effect of that consolidation, as we held in Fee's case (35 Ann. 413), was, " to terminate the existence of the original corporations, to create a new corporation, to transmute the members of the former into members of the latter, and to operate a transfer of the property, rights and liabilities of each old company to the new one."

The rights and obligations of each old company passed to the new company just as they stood; the consolidation created no new rights and no new obligations, nor did it enlarge or diminish, restrict or extend, existing rights or obligations.

If the Legislature had granted to one of the old companies any peculiar franchise which had not been granted to the other, obviously the duration of such franchise would be limited by the term for which it had been granted, i. e., by the duration of the charter of the company possessing it. The right held by this company would be the right to exercise the franchise during the term for which it was granted by the Legislature, that is, during the term of its charter, and it could not, by consolidation, confer upon the new company a greater right or one extending over a longer term; it being borne in mind that the act authorizing this consolidation has no reference to these particular corporations, but is a general law applicable to all business and manufacturing corporations. Otherwise, any corporation possessing a valuable franchise, limited as to its term by the length of its charter, might prolong it indefinitely by waiting until it was about to expire

and then consolidating with some other company having longer life, whose "objects and business were of the same general nature" but which did not possess this particular franchise or right.

The statement of such a proposition is sufficient to refute it.

The same rule must necessarily apply to obligations resting exclusively on legislative imposition, such as the one here involved. The obligation to furnish free light to the Charity Hospital has no basis except in the legislative will and power accepted by the New Orleans Gas-light Company under and according to the terms imposed, which expressly limited the obligation as to time by the words, "during the continuance of the charter of said Gas-light Company."

Therefore, at the moment of the consolidation, the old New Orleans Gas-light Company was subject to no obligation to furnish free gas to the hospital, except for a term limited by the term of its charter. This obligation and no other was transmitted to the consolidated corporation under the letter and spirit of the law.

While the consolidation terminated the existence of both old corporations, yet this destroyed neither the rights nor obligations of either, which were held by the new company precisely as they were held by each of the old ones.

Hence, the new company received the obligation precisely as the old company held it and would have continued to hold it but for the consolidation, to wit: during the term for which its charter had been granted, and I dissent from the contrary views expressed in the majority opinion.

I concur, however, in the view that this term extended to April 1, 1895, under the effect of Act 66 of 1860. The judgment of this Court declaring that act unconstitutional never became *res judicata*, by reason of the writ of error from the Supreme Court of the United States, and by reason of the compromise or transaction between the parties resulting in the consolidation which settled the whole controversy between the parties to that suit and withdrew it from further litigation by the dismissal of the writ of error, which dismissal was expressly bottomed on said settlement.

It does not lie in the mouth of the defendant corporation representing, as it does, the old New Orleans Gas-light Company, which accepted and acted under said act and enjoyed the extended privileges granted thereby, to raise anew the question of its constitutionality.

On these grounds I concur in that part of the decree only which dissolves the injunction.