# COVINGTON v. KENTUCKY.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 152.  Submitted January 18, 1899. — Decided February 20, 1899.

This court is bound by the construction put by the highest court of the State of Kentucky upon its statutes, referred to in the opinion of the court, relating to exemptions from taxation of property used for " public purposes," however much it may doubt the soundness of the interpretation.

The provision in the act of the legislature of Kentucky of May 1, 1886, c. 897, that " the said reservoir or reservoirs, machinery, pipes, mains and appurtenances, with the land on which they are situated," which the city of Covington was, by that act, authorized to acquire and construct, "shall be and remain forever exempt from state, county and city tax," did not, in view of the provision in the act of February 14, 1856, that " all charters and grants of or to corporations, or amendments thereof, and all other statutes, shall be subject to amendment or repeal at the will of the legislature, unless a contrary intent shall be therein plainly ex-

pressed," which was in force at the time of the passage of the act of May 1, 1886, tie the hands of the Commonwealth of Kentucky, so that it could not, by legislation, withdraw such exemption, and subject the property to taxation.

Before a statute — particularly one relating to taxation — should be held to be irrepealable, or not subject to amendment, an intent not to repeal or amend must be so directly and unmistakably expressed as to leave no room for doubt; and it is not so expressed when the existence of the intent arises only from inference or conjecture.

A municipal corporation is a public instrumentality, established to aid in the administration of the affairs of the State, and neither its charters, nor any legislative act regulating the use of property held by it for governmental or public purposes, is a contract within the meaning of the Constitution of the United States: and if the legislature choose to subject to taxation property held by a municipal corporation of the State for public purposes, the validity of such legislation, so far as the National Constitution is concerned, cannot be questioned.

THE case is stated in the opinion.

*Mr. William Goebel* and *Mr. W. S. Pryor* for plaintiff in error.

*Mr. W. S. Taylor*, Attorney General of Kentucky, and *Mr. Ramsey Washington* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

The plaintiff in error, a municipal corporation of Kentucky, insists that by the final judgment of the Court of Appeals of that Commonwealth sustaining the validity of certain taxation of its water-works property, it has been deprived of rights secured by that clause of the Constitution of the United States which prohibits any State from passing a law impairing the obligation of contracts. That is the only question which this court has jurisdiction to determine upon this writ of error. Rev. Stat. § 709.

By an act of the general assembly of Kentucky approved May 1, 1886, the city of Covington was authorized to build a water reservoir or reservoirs within or outside its corporate limits, either in the county of Kenton or in any county adjacent thereto, and acquire by purchase or condemnation in fee

simple the lands necessary for such reservoirs, and connect the same with the water-pipe system then existing in the city; to build a pumping house near or adjacent to the Ohio River, and provide the same with all necessary machinery and appliances, together with such lands as might be needed for the pumping house, and for connecting it with said reservoir or reservoirs. § 21.

The declared object of that legislation was that the city and its citizens might be provided with an ample supply of pure water for all purposes. To that end the city was authorized and empowered, by its board of trustees, to issue and sell bonds to an amount not exceeding $600,000, payable in not more than forty years after date, with interest at a rate not exceeding five per cent per annum — such bonds not, however, to be issued until the question of issuing them and the question of the location of the reservoir or reservoirs, whether above or below the city, should first be submitted to the qualified voters of the corporation at an election held for that purpose and approved by a majority of the votes cast.

By section 31 of that act it was provided that "said reservoir or reservoirs, machinery, pipes, mains and appurtenances, with the land upon which they are situated, shall be and remain forever exempt from state, county and city tax." Ky. Acts, 1885–6, c. 897, p. 317.

A subsequent act, approved February 15, 1888, authorized the city, in execution of the provisions of the act of 1886, to issue and sell bonds to the additional amount of $400,000. Ky. Acts, 1887–8, c. 137, p. 221.

The scheme outlined in these acts received the approval of the majority of the votes cast at an election held in the city, and thereafter bonds to the amount of $600,000 and $400,000 were issued in the name of the city and disposed of.

The proceeds of the bonds were duly applied by the city in building water reservoirs, in constructing the requisite approaches, pipes and mains, in acquiring the lands necessary for the reservoirs and for its approaches and connections, in erecting a pumping house and providing it with necessary machinery and appliances, and in buying land for a pumping house

and the connection thereof by pipes and mains with the reservoirs.

The entire works upon their completion passed under the control of the city which managed the same until March 19, 1894, by the Commissioners of Water Works, under the act of March 31, 1879, c. 121, Ky. Acts, 1879, p. 93; and since March 19, 1894, they have been controlled under the act of that date, c. 100, by a board, subject to such regulations as the city by ordinance might provide. Ky. Acts, 1894, p. 278. By the latter act it was also provided that the net revenue derived from its water works by any city of the second class — to which class the city of Covington belongs — should be applied exclusively to the improvement or reconstruction of its streets and other public ways.

When the above act of May 1, 1886, was passed there was in force a general statute of Kentucky, passed February 14, 1856, which provided, as to all charters and acts of incorporation granted after that date, that "all charters and grants of or to corporations, or amendments thereof, and all other statutes, shall be subject to amendment or repeal at the will of the legislature, unless a contrary intent be therein plainly expressed: *Provided*, That whilst privileges and franchises so granted may be changed or repealed, no amendment or repeal shall impair other rights previously vested;" and that "when any corporation shall expire or be dissolved, or its corporate rights and privileges shall cease by reason of a repeal of its charter or otherwise, and no different provision is made by law, all its works and property, and all debts payable to it shall be subject to the payment of debts owing by it, and then to distribution among the members according to their respective interests; and such corporation may sue and be sued as before, for the purpose of settlement and distribution as aforesaid." 2 Rev. Stat. Ky. 121.

This statute was not modified by the general revenue statute of May 17, 1886, which took effect September 14, 1886, and became part of Chapter 68 of the General Statutes of 1888. It constitutes § 1987 of the Revision known as the Kentucky Statutes of 1894. Nor has it been changed by any subsequent legislation in Kentucky.

The present constitution of Kentucky, adopted in 1891, contains the following provisions:

"§ 170. There shall be exempt from taxation public property used for public purposes. . . .

"§ 171. The General Assembly shall provide by law an annual tax, which, with other resources, shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year. Taxes shall be levied and collected for public purposes only. They shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws.

"§ 172. All property, not exempted from taxation by this constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale; and any officer, or other person authorized to assess values for taxation, who shall commit any wilful error in the performance of his duty, shall be deemed guilty of misfeasance, and upon conviction thereof shall forfeit his office, and be otherwise punished as may be provided by law."

By the Kentucky Statutes of 1894 it is provided:

"§ 4020. All real and personal estate within this State, and all personal estate of persons residing in this State, and of all corporations organized under the laws of this State, whether the property be in or out of this State, including intangible property, which shall be considered and estimated in fixing the value of corporate franchises as hereinafter provided, shall be subject to taxation, unless the same be exempt from taxation by the constitution, and shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale."

"§ 4022. For the purposes of taxation, real estate shall include all lands within this State and improvements thereon; and personal estate shall include every other species and character of property — that which is tangible as well as that which is intangible."

"§ 4026. The following property is exempt from taxation: Public property used for public purposes. . . ."

This act repealed all acts and parts of acts in conflict with its provisions except the act of June 4, 1892, providing additional funds for the ordinary expenses of the state government, and the act amendatory thereof approved July 6, 1892.

In the year 1895 certain lands acquired under the above act of May 1, 1886, and constituting a part of the Covington Water Works, were assessed for state and county taxation, pursuant to the statutes enacted after the passage of that act, and conformably as well to the constitution of Kentucky if that instrument did not exempt them from taxation. The taxes so assessed not having been paid, those lands after due notice were sold at public outcry by the sheriff, (who by law was the collector of state and county revenue,) and no other bidder appearing, the Commonwealth of Kentucky purchased them for $2187.24, the amount of the taxes, penalty, commission and cost of advertising.

The present action was brought by the Commonwealth to recover possession of the property so purchased.

The principal defence is that the provision in the act of May 1, 1886, that the reservoir or reservoirs, pumping house, machinery, pipes, mains and appurtenances, with the land upon which they are situated, "shall be and remain forever exempt from state, county and city taxes," constituted, in respect of the lands in question, a contract between the city of Covington and the Commonwealth of Kentucky, the obligation of which was impaired by the subsequent legislation to which reference has been made.

Referring to section 170 of the present constitution of Kentucky declaring that "there shall be exempt from taxation public property used for public purposes," the Court of Appeals of Kentucky, in this case, said : " It was followed by necessary statutory enactments, which, however, could neither curtail nor enlarge exemption from taxation as prescribed by the constitution; and accordingly, in section 4020, Kentucky Statutes, adopted for the purpose of carrying out the provisions of section 170, is the identical language we have quoted. As it was manifestly intended by both the constitution and stat-

ute to make subject to taxation all property not thereby in express terms exempted, it results that, unless the water-works property of the city of Covington be, in the language or meaning of section 170, 'public property used for public purposes,' it must be held, like similar property in other cities, subject to taxation, and the special act of May 1, 1886, stands repealed. Assuming, as a reasonable and beneficial rule of construction requires us to do, that the phrase 'for public purposes' was intended to be construed and understood according to previous judicial interpretation and usage, there can be no doubt of the proper meaning and application of it, for in the cases cited and others, where the question of subjecting particular property of cities to taxation arose, the words 'for public purposes' had been held by this court to mean in that connection the same as the words 'for governmental purposes,' and so property used by a city for public or governmental purposes was held to be exempt, while that adapted and used for profit or convenience of the citizens, individually or collectively, was held to be subject to taxation; and, recognizing and applying that distinction, water-works property of a city has been invariably treated by this court as belonging to the latter class, and consequently subject to the state and county taxation. In our opinion, the property in question is under the constitution subject to taxation, and the statute enacted in pursuance of it operated to repeal the special act of May 1, 1886."

However much we may doubt the soundness of any interpretation of the state constitution implying that lands and buildings are not public property used for public purposes when owned and used under legislative authority by a municipal corporation one of the instrumentalities or agencies of the State, for the purpose, and only for the purpose, of supplying that corporation and its people with water, and when the net revenue from such property must be applied in the improvement of public ways, we must assume, in conformity with the judgment of the highest court of Kentucky, that section 170 of the constitution of that Commonwealth cannot be construed as exempting the lands in question from taxation. In other words, we must assume that the phrase "pub-

lic purposes" in that section means "governmental purposes," and that the property here taxed is not held by the city of Covington for such purposes but only for the "profit or convenience" of its inhabitants and is liable to taxation at the will of the legislature unless at the time of the adoption of the constitution of Kentucky it was exempt from taxation in virtue of some contract the obligation of which is protected by the Constitution of the United States.

The fundamental question in the case then is whether at the time of the adoption of that constitution the city of Covington had, in respect of the lands in question, any contract with the State the obligation of which could not be impaired by any subsequent statute or by the present constitution of Kentucky adopted in 1891. If the exemption found in the act of 1886 was such a contract, then it could not be affected by that constitution any more than by a legislative enactment.

We are of opinion that the exemption from taxation embodied in that act did not tie the hands of the Commonwealth of Kentucky so that it could not, by legislation, withdraw such exemption and subject the property in question to taxation. The act of 1886 was passed subject to the provision in a general statute of Kentucky, above referred to, that all statutes "shall be subject to amendment or repeal at the will of the legislature, unless a contrary intent be therein plainly expressed." If that act in any sense constituted a contract between the city and the Commonwealth, the reservation in an existing general statute of the right to amend or repeal it was itself a part of that contract. *Griffin* v. *Kentucky Ins. Co.*, 3 Bush, 592. The city accepted the act of 1886 and acquired under it the property taxed subject to that reservation. There was in the act no "plainly expressed" intent never to amend or to repeal it. It is true that the legislature said that the reservoirs, machinery, pipes, mains and appurtenances, with the land upon which they were situated, should be forever exempt from state, county and city taxes. But such a provision falls short of a plain expression by the legislature that at no time would it exercise the reserved power of

amending or repealing the act under which the property was acquired. The utmost that can be said is that it may be inferred from the terms in which the exemption was declared that the legislature had no purpose at the time the act of 1886 was passed to withdraw the exemption from taxation; not that the power reserved would never be exerted, so far as taxation was concerned, if in the judgment of the legislature the public interests required that to be done. The power expressly reserved to amend or repeal a statute should not be frittered away by any construction of subsequent statutes based upon mere inference. Before a statute — particularly one relating to taxation — should be held to be irrepealable, or not subject to amendment, an intent not to repeal or amend must be so directly and unmistakably expressed as to leave no room for doubt; otherwise, the intent is not plainly expressed. It is not so expressed when the existence of the intent arises only from inference or conjecture.

The views we have expressed as to the power of the legislature under a reservation made by general statute of the right to amend or repeal are supported by many adjudged cases. *Tomlinson* v. *Jessup*, 15 Wall. 454, 458; *Railroad Co.* v. *Maine*, 96 U. S. 499, 510; *Railroad Co.* v. *Georgia*, 98 U. S. 359, 365; *Hoge* v. *Railroad Co.*, 99 U. S. 348, 353; *Sinking Fund cases*, 99 U. S. 700, 720; *Greenwood* v. *Freight Co.*, 105 U. S. 13, 21; *Close* v. *Glenwood Cemetery*, 107 U. S. 466, 476; *Spring Valley Water Works Co.* v. *Schottler*, 110 U. S. 347, 352; *Louisville Gas Co.* v. *Citizens Gas Co.*, 115 U. S. 683, 696; *Gibbs* v. *Consolidated Gas Co.*, 130 U. S. 396, 408; *Sioux City Street Railway* v. *Sioux City*, 138 U. S. 98, 108; *Louisville Water Co.* v. *Clark*, 143 U. S. 1, 12. In *Tomlinson* v. *Jessup*, above cited, referring to the reserved power to amend and repeal, this court said: "The object of the reservation, and of similar reservations in other charters, is to prevent a grant of corporate rights and privileges in a form which will preclude legislative interference with their exercise if the public interest should at any time require such interference. It is a provision intended to preserve to the State control over its contract with the corporators, which, without that provi-

sion, would be irrepealable and protected from any measures affecting its obligation. There is no subject over which it is of greater moment for the State to preserve its power than that of taxation. . . . Immunity from taxation, constituting in these cases a part of the contract with the government, is, by the reservation of power such as is contained in the law of 1841, subject to be revoked equally with any other provision of the charter whenever the legislature may deem it expedient for the public interests that the revocation shall be made. The reservation affects the entire relation between the State and the corporation, and places under legislative control all rights, privileges and immunities derived by its charter directly from the State." So in *Railroad Co.* v. *Maine,* above cited: " By the reservation in the law of 1831, which is to be considered as if embodied in that act, [one subsequently passed,] the State retained the power to alter it in all particulars constituting the grant to the new company, formed under it, of corporate rights, privileges and immunities. The existence of the corporation and its franchises and immunities, derived directly from the State, were thus kept under its control."

In our consideration of the question of contract we have assumed, in harmony with the judgment of the Court of Appeals of Kentucky, that the property in question was held by the city only for the profit or convenience of its people collectively, that is, in its proprietary, as distinguished from its governmental, character. There are cases adjudging that the extent of legislative power over the property of municipal corporations, such as incorporated towns and cities, may depend upon the character in which such property is held. Mr. Dillon, in his work on Municipal Corporations, says: " In its *governmental or public character*, the corporation is made, by the State, one of its instruments, or the local depositary of certain limited and prescribed political powers, to be exercised for the public good on behalf of the State rather than for itself. In this respect it is assimilated, in its nature and functions, to a county corporation, which, as we have seen, is purely part of the governmental machinery of the sovereignty

which creates it. Over all its civil, political or governmental powers, the authority of the legislature is, in the nature of things, supreme and without limitation, unless the limitation is found in the Constitution of the particular State. But in its *proprietary or private character*, the theory is that the powers are supposed not to be conferred, primarily or chiefly, from considerations connected with the government of the State at large, but for the private advantage of the compact community which is incorporated as a distinct *legal personality or corporate individual*; and as to such powers, and to property acquired thereunder, and contracts made with reference thereto, the corporation is to be regarded *quo ad hoc* as a private corporation, or at least not public in the sense that the power of the legislature over it or the rights represented by it is omnipotent." 1 Dillon's Munic. Corp. 4th ed. pp. 107, 108, § 66, and authorities cited.

If however the property in question be regarded as in some sense held by the city in its governmental or public character, and therefore as public property devoted to public purposes — which is the interpretation of the state constitution 'for which the city contends — there would still be no ground for holding that the city had in the act of 1886 a contract within the meaning of the Constitution of the United States. A municipal corporation is a public instrumentality established to aid in the administration of the affairs of the State. Neither its charter nor any legislative act regulating the use of property held by it for governmental or public purposes, is a contract within the meaning of the Constitution of the United States. If the legislature choose to subject to taxation public property held by a municipal corporation of the State for public purposes, the validity of such legislation, so far as the national Constitution is concerned, could not be questioned.

In *New Orleans* v. *New Orleans Water Works Co.*, 142 U. S. 79, 91, after referring to previous adjudications, this court said that the authorities were full and conclusive to the point that a municipal corporation, being a mere agent of the State, " stands in its governmental or public character in no contract relations with its sovereign, at whose pleasure its charter may

be amended, changed or revoked, without the impairment of
any constitutional obligation, while with respect to its private
or proprietary rights and interests it may be entitled to the
constitutional protection." Chancellor Kent, in his Commen-
taries, says: "In respect to public or municipal corporations,
which exist *only* for public purposes, as counties, cities and
towns, the legislature, under proper limitations, has a right to
change, modify, enlarge, restrain or destroy them; securing,
however, the property for the uses of those for whom it was
purchased. A public corporation, instituted for purposes con-
nected with the administration of the government, may be
controlled by the legislature, because such a corporation is
not a contract within the purview of the Constitution of the
United States. In those public corporations there is, in real-
ity, but one party, and the trustees or governors of the corpo-
ration are merely trustees for the public." 2 Kent's Com.
12th ed. p. *306. Dillon says: "Public including municipal
corporations are called into being at the pleasure of the State
and while the State may, and in the case of municipal cor-
porations usually does, it need not, obtain the consent of the
people of the locality to be affected. The charter or incorpo-
rating act of a municipal corporation is in no sense a contract
between the State and the corporation, although, as we shall
presently see, vested rights in favor of third persons, if not
indeed in favor of the corporation or rather the community
which is incorporated, may arise under it. Public corpora-
tions within the meaning of this rule are such as are estab-
lished for public purposes exclusively — that is, for purposes
connected with the administration of civil or of local govern-
ment — and corporations are public only when, in the lan-
guage of Chief Justice Marshall, 'the whole interests and
franchises are the exclusive property and domain of the gov-
ernment itself,' such as *quasi* corporations (so called), counties
and towns or cities upon which are conferred the powers
of local administration. Subject to constitutional limitations
presently to be noticed, the power of the legislature over
such corporations is supreme and transcendent; it may,
where there is no constitutional inhibition, erect, change,

divide and even abolish them, at pleasure, as it deems the public good to require." 1 Dillon's Munic. Cor. 4th ed. p. 93, § 54.

In any view of the case there is no escape from the conclusion that the city of Covington has no contract with the State exempting the property in question from taxation which is protected by the contract clause of the National Constitution.

*Perceiving no error in the record of which this court may take cognizance, the judgment is affirmed.*