## SUPREME LODGE KNIGHTS OF HONOR *v.* BIELER, EXECUTOR.

[No. 8,259. Filed May 20, 1914. Rehearing denied July 2, 1914. Transfer denied April 16, 1915.]

1. INSURANCE.—*Mutual Benefit Insurance.—Assessments.—Right to Increase.*—Where there is an express provision in the certificate of insurance issued by a mutual benefit society by which the member agrees to abide by the laws, rules and regulations of the order in force or to be thereafter enacted, the society has the power to amend its by-laws so as to increase the amount of the assessments to such sum as may become reasonably necessary to provide sufficient funds to meet its obligations. pp. 554, 559.

2. INSURANCE.—*Mutual Benefit Insurance.—Contracts.—Construction.*—Members of a mutual benefit society occupy the dual relation of insurer and insured, and the contracts which they have made with the society, containing a reserved right to amend the

by-laws will be construed in such manner as to enable the society to mature its contracts rather than to cause them to be repudiated. p. 557.

3. INSURANCE.—*Mutual Benefit Insurance.—Assessments.—Right to Increase.*—An amendment made by a mutual benefit society to its by-laws so as to increase the assessment rates is different in principle from an amendment which reduces the amount payable under the certificate, in that the latter violates the promise to pay a stipulated sum, as to which the insured has a vested right and may rely upon its strict performance.   p. 557.

4. INSURANCE. — *Mutual Benefit Insurance. — Assessments. — By-Laws.—Construction.*—The provision in the laws of a mutual benefit society that each member on presenting himself to receive the degree work "shall pay to the financial reporter the following rates  *  *  *  and the same amount on each assessment thereafter whilst he is a member", means in view of a reserved power to amend the by-laws that the specified assessment shall remain the amount to be paid so long as the insured remains in good standing, providing it proves sufficient to enable the society to pay in full the amounts stipulated in their contracts as they mature, and is not a limitation against the power to increase assessments.   p. 560.

5. INSURANCE.—*Mutual Benefit Insurance.—Increase of Assessments.—Reasonableness.*—In order that an amendment of the by-laws increasing the assessment rates of a mutual benefit society, made pursuant to a reserved power, may be held to have been unauthorized it must be shown that there was an abuse of power, or that the by-laws as amended are so unreasonable as to be void. p. 561.

6. INSURANCE.—*Mutual Benefit Insurance.—Action on Certificate.—Jury Question.*—The fact that a member of a mutual benefit society was paying a very high rate of assessment and that such rate was thereafter greatly increased does not enable the court to say as a matter of law that the increase was unreasonable, but the reasonableness or necessity of such increase is a question of fact to be determined from all the circumstances of the case. p. 561.

7. INSURANCE.—*Mutual Benefit Insurance.—Beneficiaries.*—Where a mutual benefit society had a by-law requiring the beneficiary to be a member of the immediate family, a blood relative or a person dependent upon the member at the time of his death, and providing to whom payment should be made if the designation of any beneficiary should fail for illegality or otherwise, its issuance of a certificate contracting to pay the benefits to the person named in the will of the member, though made prior to the enactment of §5044 Burns 1914, Acts 1907 p. 388, specifying to

whom the benefits shall be paid, can not be construed as an agreement to pay to a person not in the class designated by the by-laws as the proper recipients of benefits. p. 5C2.

8. INSURANCE. — *Mutual Benefit Insurance.* — *Action.* — *Parties.* — *Executor.*—Where the designation in a will, of the person named as executor, as beneficiary under a mutual benefit certificate was void because the executor was not a relative of or dependent on the member, and, under the by-laws of the society the benefits were payable in such event to certain heirs of the member, the executor could maintain an action for the recovery of the amount due on such certificate as trustee for such heirs. p. 563.

From Marion Circuit Court (19,317); *Charles Remster,* Judge.

Action by Jacob L. Bieler, executor of the last will of Louis Thieme, deceased, against the Supreme Lodge Knights of Honor. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Frederick H. Bacon, John W. Hanan, Louis B. Ewbank* and *J. Frank Hanan,* for appellant.

*Guilford A. Deitch* and *Frank C. West,* for appellee.

IBACH, J.—On October 10, 1881, appellant, a fraternal beneficiary association, issued a benefit certificate for $2,000 to one of its members, Louis Thieme, payable "to persons named in will". Appellee, as executor of the last will and testament of said member, brought this action to recover the amount specified in such certificate.

The sufficiency of the sixth paragraph of complaint to withstand demurrer presents the only question for our consideration, and this paragraph contains, in addition to the foregoing, substantially the following averments: Louis Thieme died April 9, 1910, and his will was duly probated. By its terms the benefit certificate was bequeathed to Jacob L. Bieler, who was also named as executor, and who qualified as such. Appellant's by-laws limited the payment of benefits to the immediate family, and blood relatives of the member, or persons dependent on him at the time of his death, and further provided, if any designation of beneficiaries

should fail for illegality or otherwise, the payment should be made to insured's widow and children, each sharing equally; if no widow, to his children; if neither, then to his heirs. Appellee does not come within any of the classes specified. Decedent separated from his widow, whose whereabouts, if alive, are unknown to appellee, and left no children, and no heirs in this country, but did leave heirs in Germany, the names of whom are unknown to appellee. Appellee sues as executor for the benefit of whomsoever of the heirs of decedent the Marion Probate Court shall decree is entitled to the proceeds of said insurance. Due notice of the death was given to appellant and payment refused on the ground that decedent was not in good standing when he died, he having been suspended for nonpayment of the April, 1908, assessment. Appellant should be estopped to claim a forfeiture for nonpayment of said assessment for the reasons that said Thieme was fifty-four years old when the certificate in suit was issued and at that time the by-laws of the society provided ''each and every member upon presenting himself to receive the third or degree of manhood shall pay to the financial reporter the following rates into the widows' and orphans' benefit fund, and the same amount on each assessment thereafter, while he is a member of this order, viz.,   *   *   *   Between the ages of 53 and 54, $3.50''. Under and by the terms of said section Louis Thieme, at the time he became a member of appellant order, was liable to pay, and upon obtaining membership did pay, $3.50 upon each assessment made against him. The by-laws of appellant were amended at various times and under the amendments Louis Thieme paid $6 on each assessment from 1897 to August, 1899, $8 on each assessment from August, 1899 to September 30, 1905. The by-laws were amended in 1905 so as to require members then over seventy years of age to pay $15 on each assessment. Thieme paid such increased assessment until February, 1908. Again in March, 1907, the by-laws of the order were amended, and each member over

eighty years of age was thereby required to pay $39.30 on each assessment. Thieme was over eighty years of age, and after the June, 1907, amendment, up to and including February 6, 1908, appellant continued to assess and collect from him $15 for each assessment. In March, 1908, appellant's financial reporter demanded of decedent the sum of $39.50 for the March assessment and notified him that, if such assessment was not paid during the month of March, his insurance would be forfeited. This amount was paid by him under protest. Again in April, 1908, a demand for the same amount was made with the same declaration of forfeiture if it was not paid during that month. This sum he refused to pay, and offered to pay $15, which sum the financial reporter refused to accept, and the certificate sued on was marked by appellant as cancelled and forfeited, and the name of Thieme was struck from its list of members. Appellee and Thieme performed all the conditions of the contract. A copy of the certificate is made a part of the complaint and in it is a provision for the payment of the stipulated amount of insurance "upon condition that said member complies with the laws, rules and regulations now governing this order or that may hereafter be enacted for its government." The trial court overruled appellant's demurrer to this paragraph of complaint, and electing to stand on its demurrer and refusing to plead further, judgment was rendered against it for $2,011.36.

Counsel for appellant contend that for several reasons this complaint is insufficient. The first of these is that it affirmatively appears therefrom that the insured had

1.   failed to pay the assessment made in April, 1908, and there is no averment tending in any way to show that the assessment provided for by the amended by-law and the amount demanded after such amendment was unauthorized or unreasonable, or that the society did not have the right to demand the payment of such assessment, except that portion of the pleading consisting of a copy of appel-

lant's by-laws in force when the insured became a member, which fixed the amount of assessment of members of the same age at $3.50 for each assessment, and because he failed to pay the April, 1908, assessment, which was for a larger .sum, appellee's decedent was not a member of the order. in good standing at the time of his death, and therefore no cause of action existed in favor of any one on his certificate.

It is the evident theory of the pleader that when Thieme became a member of appellant society his rate of assessment was fixed by its by-laws and that amount could not thereafter be increased, so as to affect him by any change in the by-laws. Broadly stated, the contention is that having once fixed the rate of assessments required to be paid by him to remain in good standing in the order, no power existed in it to modify or change its by-laws so as to affect the vested rights of its preëxisting members without their consent. Such is generally held to be the correct rule in the absence of a provision either in the laws of the order or in the certificate issued to the member, permitting the increase of assessments. The question in this case is, What should be the rule when there is an express provision in the certificate of insurance by which the member agreed to abide by laws, rules and regulations of the order after enacted?

This particular question has never been determined by the courts of this State, and an examination of the cases in other jurisdictions reveals the fact that they are not in harmony, but follow two lines of decisions, one holding that under a general reservation of the right to change by-laws, assessments may be raised, the other denying that power, as an infringement of the obligation of contracts. We believe, however, that the cases which support the right under such provisions to raise assessments are founded on the best reasoning and supported by the weight of authority. Indeed, there are some cases which go so far as to hold that when the purposes of an organization such as appellant are considered, the right to amend its by-laws by fair and reasonable

increase of assessment rates to enable it to accumulate funds out of which its legitimate contracts may be paid, is but one of the powers incident to its corporate existence. Else, it is reasoned, how can the life of such societies be preserved when it becomes evident that by reason of the changing conditions of its membership, previous methods of raising funds and at that time sufficient, have proved inadequate? Before there can be a fund out of which the death claims can be paid, there must be such a rate of assessment against the members as will produce such fund. A less amount can only result in a dissolution of the society, and serious damage to all its members. So that in instances where the funds are insufficient under present rates of assessment to meet the death claims against it, although considered sufficient when made, there is an inherent power resting in such fraternal benefit societies to so amend their by-laws, as to increase the rate of assessment for the purpose of maturing its contracts, so long as such rate of increase is reasonable and proportional, the young and old members contributing according to the risk assumed in carrying each, without arbitrary discrimination, and does not affect any vested rights possessed by any of such members. Whether this reasoning is strictly correct we need not decide, for here we have an objecting member, who on his account has agreed not only to conform to the present laws of the order, but also to such future laws as may be from time to time enacted by the official body governing the same, and as to such contracts the better reasoned cases hold that assessments may be raised by such societies under such reserved power to amend by-laws. *Fullenwider* v. *Supreme Council, etc.,* (1899), 180 Ill. 621, 54 N. E. 485, 72 Am. St. 239; *Messer* v. *Grand Lodge, etc.* (1902), 180 Mass. 321, 62 N. E. 252; *Reynolds* v. *Supreme Council, etc.* (1906), 192 Mass. 150, 78 N. E. 129, 7 L. R. A. (N. S.) 1154, 7 Ann. Cas. 776; *Ebert* v. *Mutual Reserve Fund Life Assn.* (1900), 81 Minn. 116, 83 N. W. 506, 84 N. W. 457; *Wineland* v. *Knights of*

*Maccabees* (1907), 148 Mich. 608, 112 N. W. 696.   These
cases and many others which might be cited to support the
same doctrine, are based upon the rule of necessity.

2.   Fraternal benefit societies are said to be mutual in
character, each member thereof occupying the dual
relation of insurer and insured, and the contracts which he
has made with the society, containing a reserved right to
amend by-laws, will be construed in such a manner as to
enable the society to mature its contracts rather than to
cause them to be repudiated, upon the ground that a change
in the rate of assessment is necessary to fulfill the purpose
of its organization.   It certainly is not the policy of the
law to create these beneficial societies and yet not permit
them by reasonable provisions of their by-laws, to acquire
the necessary funds, honestly, fairly and justly to administer
them so as to result in the greatest benefit to the greatest
number of its members.

In opposition to this view, appellee has cited a number
of cases, some of which hold that it is an interference with
contract rights for a fraternal benefit society by a

3.   subsequent by-law to raise the amount of an assess-
ment, others which hold that a subsequent by-law
which reduces the amount of the benefit certificate is illegal
and void.   As we view the proposition, there is a clear
distinction between the cases wherein the effect of the change
in the by-laws is to entirely alter the promise of the society
made with one of its members so as to reduce the promised
benefits, and those cases where the changes are made in the
rate of assessment for the express purpose of enabling such
society to provide a fund sufficient to pay the certificates
which it has legally issued as each matures.   So far as we
are able to discover, all the courts are agreed upon the
proposition that under a reserved power to amend by-laws
similar to that contained in the present certificate, no amend-
ment can be sustained which will in any manner affect the
promise of the society to pay a stipulated sum to one of

its insured members for, as to such a promise, the insured has a vested right and may rely upon its strict performance.

This subject is fully discussed in the case of *Reynolds* v. *Supreme Council, etc., supra.* In that case the court said: "There are many cases in which it is held that the amount expressly promised to be paid in the certificate like those issued by the defendant can not be cut down by an amendment of the by-laws. * * * But in many of these * * * a distinction is made between the express stipulation of the corporation to pay a certain sum and other provisions relating to the methods of the corporation, and the duties of the certificate holders, which properly may be a subject for a regulation by by-laws, even though they affect the rights of the parties under their contract. The assessments to be paid for death benefits in this case are provided for by the by-laws, while the promise in writing to pay a certain sum to a particular person is, as to that person, a matter outside of those corporate rules which may be expected to be changed by an amendment of the by-laws. This promise on one side is set over against the promise of the member on the other. The promise of the member is to do what may be called for by the by-laws then existing or that may afterward be adopted. The promise of the corporation is stated expressly, without mention of the by-laws. The member occupies a dual position, as an insurer and the insured. As one of the association agreeing to provide for the payments that may become due to members, he agrees to be subject to the by-laws. As the insured person to whom a particular sum of money is promised, he has a right to stand on the terms of the promise."

An examination of many of the cases relied on by appellee, will disclose that they are those where the by-laws were amended so as to affect the fixed promise made to the certificate holder as the person insured, and have no reference to his duties as a member of the society, which has made the specific promise to each certificate holder that the several

amounts called for therein would be paid in full. In some of the cases which deny the right to raise assessments, the amount of the assessment was provided for in the certificate. However, it would be useless to ignore the fact that there are two lines of authority, and that there is very respectable recent authority which seems to have been followed by the lower court, and we would have to hold, were we to follow it, that the raise in amount of assessments by appellant was an infringement of contract rights. The law in New York seems to be settled on this point, and other states follow the same rule. *Wright* v. *Knights of Maccabees* (1909), 196 N. Y. 391, 89 N. E. 1078, 134 Am. St. 838, 31 L. R. A. (N. S.) 423; *Greene* v. *Supreme Council, etc.* (1912), 206 N. Y. 591, 100 N. E. 411; *Smythe* v. *Supreme Lodge K. of P.* (1912), 198 Fed. 967; *Ericson* v. *Supreme Ruling, etc.* (1912), 105 Tex. 170, 146 S. W. 160; *Poole* v. *Supreme Circle, etc.* (1911), 85 Atl. (N. J.) 821.

All the authorities are agreed on two general rules: (1) that under the reserved power to amend laws, rules and regulations, the benefit society may not make an amendment which will impair vested contract rights; (2) that under said reserved power, the benefit society may make reasonable and necessary amendments to its laws, rules and regulations. The conflict arises in the class of cases to which one court applies one of the above rules, while other courts apply the other rule, that is, the courts do not agree as to what are vested rights under benefit contracts, or as to what are reasonable amendments to by-laws. The cases which we have cited to support our position all hold a reasonable, necessary and impartial increase in rates is a reasonable amendment of by-laws, under the reserved power of amendment. The certificate sued on contains an express stipulation that it is ''payable upon condition that said member complies with the laws, rules and regulations now governing this order or that may be hereafter enacted for its government.'' This provision, we believe, distinguishes the

1.

case from some of those relied upon by appellee. See *Norton* v. *Catholic Order of Foresters* (1908), 138 Iowa 464, 114 N. W. 893, 24 L. R. A. (N. S.) 1030. Questions analogous in general principle to the case under consideration have been passed upon by the Supreme Court of the United States, and its decisions support our conclusions. See *Covington* v. *Kentucky* (1899), 173 U. S. 231, 19 Sup. Ct. 383, 43 L. Ed. 679, and cases cited.

That portion of the constitution and laws of the order in force when decedent became a member, which provides "Each and every member, except honorary members, 4. upon presenting himself to receive the third or degree of manhood shall pay to the financial reporter the following rates into the widows' and orphans' benefit fund, and the same amount on each assessment thereafter, whilst he is a member of this order," means, in our view, that the specified assessment should remain the amount to be paid by the member on such certificate so long as he remained in good standing in the order, provided that assessment would be sufficient to enable the society to pay to the beneficiary of the members the amounts stipulated in their contracts as they matured, not in part, but in full. If conditions arose in the future which clearly made it impossible to meet such demands, then the members had consented that the by-laws might be so amended as to enable the society to realize sufficient funds from all the members to pay all obligations resting on it as expressed in the several certificates which had been properly issued. In this case the society was not limited as to the number of assessments, and even if we were to hold that it had no right to increase the amount of assessments, it might accomplish the same result by increasing the number of assessments. It may also be well to remember that, from the assessments levied by benefit associations, no reserve is created to take care of an increasing risk, that the member simply pays for insurance from assessment to assessment, and if he fails

to pay an assessment is entitled to no extended insurance from a reserve created by former payments, that each assessment is merely a payment for protection for the time for which the assessment is levied, and that having lived past that time, the member has no right in the proceeds of his past assessments. Therefore, if assessments become higher than a member cares to pay, he, having received the full consideration for his past payments, may at any time resign from the order without losing anything. He who contracts for assessment insurance must be considered to have had in mind when the contract was made that there were disadvantages as well as advantages in this form of insurance as contrasted with other forms.

There is no averment in the complaint that the amendments of appellant's by-laws increasing the rate of assessment of decedent were not adopted legally and honestly, nor is there any averment that the increase was not a reasonable one to carry out the purposes and objects of the society, or that there was an abuse of the power reserved to it in the certificate issued to decedent. In cases such as this, it must appear that there was an abuse of power, or that the by-laws as amended were so unreasonable as to be void, before an amendment is unauthorized. *Supreme Lodge, etc.* v. *Knight* (1889), 117 Ind. 489, 497, 20 N. E. 479, 3 L. R. A. 409. Although the complaint shows that decedent was paying a very high rate of assessment, and discloses a sudden very large increase in that rate, in the absence of an averment that they were unreasonable, we can not say from these facts alone, that the increase in rates was unreasonable as a matter of law. These facts would be circumstances for the consideration of the jury in determining whether the increase was unreasonable. It is a question of fact to be determined from all the circumstances of the case as to whether the increases were reasonable and necessary, and therefore binding on

appellee's decedent, if he wished to remain insured under his certificate issued by appellant. Appellant's demurrer to appellee's sixth paragraph of complaint should have been sustained.

Being mindful of the fact that the complaint may be so amended as to overcome the defects already discussed, and an effort made to proceed further in the name of the executor, it becomes incumbent upon us to pass on the right of appellee to maintain the action.

The second question presented in considering the sufficiency of the complaint is, Was the plaintiff a proper party to maintain the action? Appellant's insistence is

7. that if there is any right of action, it is in the widow, if living, and then, since there are no children, in the heirs, and not in the executor under the will. It might be said that appellant, by contracting to pay the benefits to the person named in the will of Louis Thieme, waived the provision of its by-laws requiring the beneficiary to be a member of the immediate family, a blood relative, or person dependent upon the member at the time of his death. But our statute provides, as a condition necessary to the doing of business in this State, that fraternal benefit societies shall pay death benefits to the families, heirs, blood relatives, affianced husband, affianced wife, or to persons dependent upon the member. §5044 Burns 1914, Acts 1907 p. 388. This statute, though in force when Thieme designated a beneficiary by his will, was not in force when the contract was made. Appellant contracted with Thieme to pay the benefits to persons named in his will, yet at the time there was a by-law which provided that if any designation should fail for illegality, or otherwise, then the benefits should be paid to the widow and children, if no widow, to the children, if no children, to his heirs. We do not think, in the light of this latter provision of the by-laws, that the agreement by appellant to pay to the persons named in Thieme's will, could be construed as an agreement to pay to a person

not in the class designated by the by-laws as the proper recipients of benefits. Then, as appellee can not re-cover on his own behalf, Can he recover as a trustee for the parties entitled to take? In the case of *Gibbs* v. *Knights of Pythias* (1913), 173 Mo. App. 34, 50, 156 S. W. 16, the insurer issued to the insured a certificate "payable to his legal representative or representatives". By his will the insured member appointed Gibbs his sole legatee, and made him executor of the will. Gibbs was not a member of the class of beneficiaries authorized by the Missouri statute. The court held that Gibbs as executor could not recover either for the benefit of himself as legatee, or of the estate of the insured, but that he could recover in trust for those to whom the benefit should go under the laws and constitution of the order, in event no beneficiary was designated by the insured. The court said, "when the contract has been fully executed, as here, on the one part by the payment of all assessments and dues and the death of the insured, the society will not be allowed to success-fully assert, in defense, that the designation in the bene-ficiary certificate was one of a class of persons not included in the enumeration in the charter of those for whom bene-fits are to be provided. * * * When a fund, such as this, is sought to be diverted from its proper purpose by will and the suit is by the executor, it is the duty of the court, if it appears the contract has been fully executed on the one part, to enforce the payment and direct its course to the proper recipient who is qualified as such under the charter. We say this because it is the purpose and the spirit of the law to award the bounties accumulated under benefit certificates to the persons for whom it is designed in the charter the fund should be accumulated, and for the further reason that the executor under the will, or the ad-ministrator of the insured, when the certificate so provides is a proper party to prosecute the suit as his representative. But both from the obvious intent and spirit of the statute

and an express provision to that effect, the benefit is free to the use of the parties designated and from attachment and execution or other claims of the creditors of decedent. * * * This being true, plaintiff executor is entitled to recover, but not to his own use as legatee under the will nor to the use of the estate of the insured, for the fund is not technically and strictly an asset of the estate of the insured, but rather special to the use contemplated in the charter. * * * The recovery must, therefore, be had in trust, to the use of those for whom the benefit was accumulated under the charter and to whom it should be paid in accordance with the by-laws of the order when no proper designation of a beneficiary has been made. As a rule, the administrator and executor, of course, represent the decedent generally, and, when he recovers in that capacity, recovers to the use of the estate and as available to all persons who have just claims against it. Because of this, it seems anomalous to permit a recovery by him in an action at law as in trust for a special use not available to the estate and the general claims of creditors. However this may be, by our statute * * * the fund is relieved of all liability for the debt of either the certificate holder or the beneficiary named therein or of any other person who may have a right thereunder, and in view of this the courts seem to have modified this general rule, to the end of effectuating the manifest purpose of the benevolent statutes. The thought is, that this statute qualifies the right of the decedent. Therefore, this court, on a prior occasion, authorized a recovery by the administrator of the beneficiary in the certificate, who died after the decease of the insured member, her husband, and before the certificate was paid, as in trust for her heirs and free from the claims of creditors against her estate. * * * " In actions at law the courts "sustain recoveries on such certificates by the administrator or executor as in trust to the use of the parties who are rightfully entitled to the fund. See *Shea* v. *Massachusetts Ben. Assn.* [1894],

160 Mass. 289 [35 N. E. 855, 39 Am. St. 475]; *Burns* v. *Grand Lodge, etc.* [1891], 153 Mass. 173 [26 N. E. 443]; *Rindge* v. *New England Mut. Aid Soc.* [1888], 146 Mass. 286 [15 N. E. 628]. We believe this to be especially true and the doctrine peculiarly appropriate in those cases where the certificate is payable to the personal representatives as here, but for some inherent, valid reason the administrator himself may not recover for the benefit of the estate. See *Bishop* v. *Grand Lodge, etc.* [1889], 112 N. Y. 627 [20 N. E. 562]."

In the case of *Shea* v. *Massachusetts Ben. Assn., supra,* it was said: "The defendant contends that the action should have been brought in the name of Margaret B. Shea, the beneficiary. She was the daughter in law of John Shea, and, as both parties contend, was not within the classes of persons who may be beneficiaries. The·designation of her as beneficiary, was therefore, invalid, and she could not maintain an action. * * * Such invalid designation, however, does not destroy the contract, which provides that, if Margaret should not be living at John Shea's death, then the payment should be made to his heirs at law. The executrix may maintain the action for their benefit." Citing *Rindge* v. *New England Mut. Aid Soc., supra,* and *Burns* v. *Grand Lodge, etc., supra.*

In the case of *Brooklyn Trust Co.* v. *Seventh Reg., etc.* (1906), 113 App. Div. 717, 99 N. Y. Supp. 248, the policy was made payable to "beneficiary, as provided for in will". By his will the insured left the residue of his estate after certain bequests, to the plaintiff trust company, and the court said, "We think it was the intention of the testator to name the plaintiff, in its character as testamentary trustee, as his beneficiary."

It was said in the case of *Smith* v. *Supreme Tent, etc.* (1905), 127 Iowa 115, 102 N. W. 830, 69 L. R. A. 174. "It seems to be well settled that, where the beneficiary named is incapable of taking the proceeds under the law, the administrator of the deceased person can recover the

proceeds, just as he might if no beneficiary had been named.''
In the case of *Janda* v. *Bohemian, etc., Union* (1902), 71
App. Div. 150, 75 N. Y. Supp. 654; the fund was by the
terms of the by-laws made payable to the ''legal heirs'', and
the question was whether the widow as administratrix was
entitled to maintain the action. The court, said, quoting
from *Bishop* v. *Grand Lodge, etc., supra,* a similar case, ''We
also think the plaintiff had sufficient interest in the fund
to sustain this action in her capacity as administratrix. It
is true the fund does not come into her hands technically
and strictly as assets of the estate of her intestate, nor is
it to be liable for his debts. But the plaintiff, in her capaci-
ty as administratrix, represents both herself and those others
who are entitled to receive the fund as its intended bene-
ficiaries, for it comes to them by reason of the membership
of the deceased, and the plaintiff is a *quasi* trustee for the
children, and as administratrix represents them in this ac-
tion. *   *   *   The action is properly brought in the name
of the plaintiff.''

All the cases cited above, and others, seem fairly to sup-
port the contention that appellee is a proper party plaintiff.
The case of *Gibbs* v. *Knights of Pythias, supra,* is almost on
all fours with the present case. There are practically no
authorities in direct opposition to appellee's contention, al-
though certain general rules of law would seem to favor
appellant's views. However, we believe, since appellee was
named in Thieme's will as beneficiary and as executor,
enough effect should be given to Thieme's attempt to exer-
cise the power he had of naming the beneficiary, to allow
appellee as executor to maintain this action, as a trustee for
the persons entitled to the proceeds of the benefit certificate,
under the by-laws and constitution of the order, and the stat-
utes of Indiana.

For reasons previously indicated, the court erred in over-
ruling appellant's demurrer to appellee's sixth paragraph

of complaint, and for this reason the judgment is reversed, with directions to sustain said demurrer.

NOTE.—Reported in 105 N. E. 244. As to mutual or membership features specially applicable to life or accident insurance, see 52 Am. St. 543. As to the right of a mutual benefit society to increase rates, see 7 L. R. A. (N. S.) 1154; 31 L. R. A. (N. S.) 417. See, also, under (1) 29 Cyc. 79, 74; (2) 29 Cyc. 66; (3) 29 Cyc. 79; (4) 29 Cyc. 68, 79; (5) 29 Cyc. 72, 79; (6) 29 Cyc. 247; (7) 29 Cyc. 121; (8) 29 Cyc. 218.