JOHN M. MILLER v. THE NATIONAL COUNCIL OF THE
KNIGHTS AND LADIES OF SECURITY *et al.*

No. 13,262. (76 Pac. 830.)

SYLLABUS BY THE COURT.

1. LIFE INSURANCE—*Fraternal Beneficiary Associations—Members Bound by Subsequent Changes in Laws and Rates.* Where a fraternal beneficiary association has issued to a member a benefit certificate which is so defective in its recitals as to make reference to the by-laws of the association necessary in order to understand the exact obligations and duties of each of the parties, such by-laws are a part of the agreement, and where the certificate and by-laws make it apparent that the member agreed to be bound by subsequently-enacted by-laws, he is bound by a new law which changes and increases his rate of monthly assessments, if it be reasonable and necessary to the accomplishment of the purposes of the association.

2. ——— *Change of Place of Meeting of the Association's Legislative Body Held Authorized.* Where the statute under which a fraternal beneficiary association is incorporated authorizes the association so to amend or alter its by-laws as to provide for holding the meetings of its legislative body in any state or territory where it has subordinate lodges, and its governing body, at a regular meeting, has adopted a resolution to meet next at a place other than that stated in the by-laws, in another state, the meeting held under the provisions of such resolution, if otherwise regular, is authorized, and its proceedings valid.

Original proceeding in mandamus. First opinion *
filed July 10, 1903. Writ allowed. Rehearing granted.
Second opinion (which follows) filed May 7, 1904.
Writ denied.

*D. C. Tillotson, T. D. Humphreys,* and *T. H. Bain,*
for plaintiff.

*David Overmyer, Samuel Dalton, G. A. Huron,* and
*D. W. Mulvane,* for defendants.

* Not officially reported, but see 73 Pac. 88.—REP.

The opinion of the court was delivered by

GREENE, J. : This is an original proceeding in mandamus. The Knights and Ladies of Security is a fraternal beneficiary association. S. R. Tuttle was the financial secretary of Columbia council No. 50, a subordinate council of said association, and all dues were payable to him. John M. Miller was a member in good standing of council No. 50 up to July, 1902. The plaintiff was a level-rate member and his dues were payable monthly. In July, 1902, he tendered to the financial secretary all dues which he claimed were owing by him for that month, which were refused. On July 31 the financial secretary declared and entered the plaintiff as a delinquent, and suspended him for the non-payment of his July assessment.

This action was brought to compel the association and the financial secretary to accept from plaintiff the amount so tendered in full payment of his assessment for the month of July, 1902, and to reinstate him as a member in good standing. An alternative writ was allowed, to which the defendant makes return, in substance, that the amount so tendered by the plaintiff as his July assessment was less than the actual amount due from him ; that plaintiff's contract with the association is made up of its charter, which is chapter 23, Laws of 1898, as amended by chapter 147 Laws of 1899 (Gen. Stat. 1901, §§ 3568–3584), the code of laws of the order in force when plaintiff became a member and as subsequently changed, and his application and certificate ; that because of the nature and purpose of the association and the express terms of plaintiff's contract the association reserved the right to make any change in its by-laws reasonable and necessary to the accomplishment of its general pur-

pose; that in pursuance of such reserve power the national council, at its biennial meeting held at Louisville, Ky., in 1902, so amended its by-laws as to require all level-rate members belonging to plaintiff's class of risks, who held certificates issued prior to March 1, 1896, which provided for a level mortuary rate of a fifty-cent monthly assessment on each $1000, to pay a graduated rate as of the age when admitted, thus raising the plaintiff's rate from fifty cents to seventy cents per month on each $1000 of insurance.

The plaintiff denies that he consented to the reservation of such power by the association, and alleges that the meeting of the national council held at Louisville, Ky., was without authority and in violation of one of the by-laws of the order, which provides that all meetings of the national council shall be held in the city of Topeka; that therefore its act placing plaintiff on the graduated list was void. Some other contentions are made by both parties, but we do not deem them of sufficient importance to be entitled to special consideration.

The local affairs of the order are controlled and managed by local or subordinate councils and its general affairs by a national council. The latter is composed of national officers and representatives rom the states. The representatives are elected by the members from each state where the order is established, and are apportioned one for each state and one for every 1000 members, or major fraction thereof. The by-laws of the association in force when the plaintiff became a member which are necessary to a right understanding and determination of the questions presented were the following:

"SECTION 1. The National Council of the Knights and Ladies of Security shall, alone, have the power

to amend the constitution, ritual, laws and rules of discipline of the order, and it shall exercise all the powers of a supreme body of associations similar to this.

"Sec. 2. Its decisions on all matters pertaining to the order shall be final. It shall hear and decide all appeals, redress all grievances, and provide by legislation for the enforcement of its decisions.

"Sec. 3. It shall have the power to grant charters to councils; to form them into state meetings, so that they may be properly represented in national meetings. It shall have the power, by a vote of two-thirds of the members present at any meeting, to deprive a council of its charter; provided, such deprivation or annulment shall be made only for the violation of the constitution or commands of the national council or of the national executive committee.

"Sec. 4. It shall have exclusive jurisdiction of all councils of the order, and shall have the right and power to collect all assessments for the general, beneficiary and reserve funds."

It is stated that the purpose and object of the organization is

"to unite both sexes in one grand fraternal association for the promotion of benevolence, charity, social culture, mental improvement, education, care for the sick and needy, to aid one another in obtaining employment, to assist each other in business, to induce the general elevation of the morals of society, and to provide a beneficiary fund, payable at death as the insured may direct, a sum ranging from $500 to $3000, or part in case of physical disability or partial disability."

For the purpose of raising this beneficiary fund the following provision is made :

"Each member shall pay to the financial secretary of the council to which he or she belongs, on each assessment, a sum according to the amount of his or her beneficiary certificate as shown in the following

table, which is as follows : 25 cents on $500 benefi-
ciary certificate, 50 cents on $1000, $1 on $2000, and
$1.50 on $3000."

Article 3 provides :

"SECTION 1. National meetings shall be held quad-
rennially, in the city of Topeka, Kan., on the second
Tuesday in January, at 9 : 30 A. M., in the national
hall of the society.

"SEC. 2. Called sessions of the national council
shall be convened by the national president when
twelve or more members of the national council, each
in good standing, notify him in writing over their sig-
natures of the object of the meeting. The business
to be transacted must be specified in the call, and
no other business shall be transacted."

Subsequently section 1 was so amended as to pro-
vide for the holding of national meetings biennially.

The plaintiff's application for membership con-
tained the following agreement :

"I further agree, if accepted as a member of the
order, to faithfully abide by all its rules and regula-
tions."

Preliminary to a determination of the important
and controlling issue in this case is the question,.
Are the entire proceedings of the national council held
at Louisville, Ky., in 1902, void because of a provi-
sion in the by-laws that all meetings of the national
council shall be held in Topeka, Kan.? The charter of
this association is chapter 23, Laws of 1898, as amended
by chapter 147, Laws of 1899 (Gen. Stat. 1901, §§ 3568-
–3584). By the provisions of section 8 of the original
act, the governing body of this association has the
power to make by-laws not inconsistent with the con-
stitution and laws of the state and of the United States,
and section 10 authorizes such association so to amend
its by-laws as to provide for holding the meetings

of its legislative body in any other state or territory where such association has subordinate lodges. Under the provisions of sections 1 and 2 of its by-laws the national council has power to amend the by-laws without notice or formal proceeding, and "its decision on all matters pertaining to the order shall be final." The record of the proceedings of the national council held at Topeka, Kan., 1900, shows that the association adopted the following resolution : "*Resolved*, that the national council hold its meeting two years hence in the city of Louisville, Ky." It was within the power conferred upon the national council, notwithstanding the by-laws, to change the place of its meeting, and its decision on this question was final, and the proceedings regularly had at such meeting were not void.

The important question in this case is, Did the association, with the consent of plaintiff, reserve the power so to alter or amend its by-laws subsequently to the issuance of plaintiff's certificate as to increase the amount of his monthly assessments ? The plaintiff's certificate is not his entire contract, and therefore not determinative of his rights and duties ; it is not complete in itself. Some of the conditions and agreements which make his contract must be looked for elsewhere. The certificate does not contain a statement of what his rate of assessment is nor when it shall be paid. To supply these omissions we must look to the by-laws of the association, his application, and certificate. To determine his rights and the exact relation between the plaintiff and the association we must look to the charter of the association.

The by-laws in existence when plaintiff became a member conferred upon the national council the power to amend its constitution, and also provided that its

decisions on all matters pertaining to the order should be final. The plaintiff, knowing that this power was vested in the national council, made application to become a member, in which application he agreed faithfully to abide by all the rules and regulations of the order, if he should be accepted as a member. He was accepted on the conditions expressed in his certificate of membership, one of which is the following :

"This certificate is issued upon the express condition that the said insured shall in every particular, while a member of the order, comply with all the laws, rules and requirements thereof, and shall at his death be a member in good standing of said order."

This association was organized for the mutual benefit and support of its members. It has no capital except what is paid by the members for the mutual benefit of all in case of sickness, or of their beneficiaries in case of death. It was not organized for profit, but to furnish a cheap rate of insurance for its members. The contractual relations between the members and the association should not be measured by the standard, or determined by the legal principles, which are applicable between an ordinary insurance company and the holder of one of its policies. The insured are members of the association ; each has a voice in all proceedings pertaining to its business or general welfare, and in some ways it assimilates a partnership. All money collected by its scheme of assessment is the common property of the members, to be paid out in such amounts and to such persons as are designated by the members in their certificates upon the happening of certain events. For the purpose of better carrying out the scheme a national council was created, upon which was conferred the power to decide all matters pertaining to the order, and it was provided that its decisions should be final.

The condition in plaintiff's certificate that he should in every particular, while a member of the order, comply with all the laws, rules and requirements thereof was a consent on his part not only to comply with the laws then in force, but also to comply with all reasonable rules and regulations that might be made thereafter in the interests of the association. Every person joining an association obligates himself, without so expressing it, to conform to, and comply with, all its existing laws ; and, if the provision in the plaintiff's certificate means anything, it is that he agreed to comply with all laws then in force or subsequently to be enacted by the national council.

It therefore follows that the alternative writ must be set aside, and the case dismissed at the cost of plaintiff.

All the Justices concurring.