THE KNIGHTS OF THE MACCABEES OF THE WORLD V. ANNA NELSON.

No. 15,459.   (95 Pac. 1052.)

SYLLABUS BY THE COURT.

FRATERNAL INSURANCE—*By-laws and Subsequent Amendments Made Part of the Contract—Reasonable Amendment.* In the written application for membership to an insurance association was the following: "This application and the laws of the supreme tent now in force, or that may hereafter be adopted, are made a part of the contract between myself and the supreme tent, and I, for myself and my beneficiary or beneficiaries, agree to conform to and be governed thereby." In the certificate issued to him, in which the association undertook to pay a certain amount to his beneficiary upon his death, occurred the following: "Provided he shall have in every particular complied with the laws, rules and regulations of the order governing members and their beneficiaries which are now in force, or may hereafter be adopted by the supreme tent, or the subordinate tent to which he belongs." A by-law of the association in force at the time of the issuance of the certificate contained the following: "But no benefit shall be payable on account of the death of any member while engaged in a mob, . . . or by reason of death the result of suicide within two years after admission." Thereafter, and some years before the death of the member, the association regularly amended its by-law to read as follows: "No benefits shall be paid on account of the death of a member when death

was the result of suicide, whether the member taking his own life was sane or insane at the time; provided, that in case of suicide twice the amount of all assessments or month rates paid to the supreme tent by such member shall be paid back to the beneficiary named in the certificate, or to the person found to be entitled to receive the same, which amount shall not exceed the face of the certificate, and such amount shall be the full amount that can be claimed in any such case." *Held,* that in such case the amendment to the by-laws is reasonable and is valid, and, a member having come to his death by suicide, the beneficiary is entitled to recover upon the benefit certificate only twice the amount of all assessments or month rates paid to the supreme tent by him.

Error from Atchison district court; BENJAMIN F. HUDSON, judge. Opinion filed April 11, 1908. Reversed.

### STATEMENT.

PLAINTIFF in error is a fraternal-insurance association. In 1892 Andrew Nelson, the deceased husband of the defendant in error, was admitted to membership in the association and received a certificate or policy of insurance, by the terms of which the association agreed to pay, upon certain conditions, the amount of one assessment, not exceeding $2000, to his beneficiary at his death. The defendant in error was named as his beneficiary. Nelson died November 17, 1905, and proof of his death was duly made, as was also a demand for payment of the indemnity of $2000, by the beneficiary.

The association claimed that Nelson died by his own hand; that under the provision of the by-laws in force at the time of his death his beneficiary was entitled to only twice the amount paid as dues by Nelson during his lifetime, which sum was $768. A compromise was effected and the association paid Mrs. Nelson $1000. Thereafter she brought suit against the association for the additional $1000, claiming that the compromise had been procured by fraud, which the defendant denied. A trial was had upon the issues substantially according to the facts as set forth, Mrs. Nelson recovered the full

Maccabees v. Nelson.

amount she claimed, and the association brings the case here for review.

*Waggener, Orr & Challis,* for plaintiff in error; *D. D. Aitken,* of counsel.

*C. D. Walker,* and *J. L. Berry,* for defendant in error.

*D. C. Tillotson,* as *amicus curiæ.*

The opinion of the court was delivered by .

SMITH, J.: The association assigns numerous errors in the introduction of evidence, in the overruling of its demurrer to plaintiff's evidence, and in the giving of, and refusal to give, instructions.

The association does not question but that one assessment would have aggregated the amount of $2000, and it was admitted on the argument of this case that Nelson came to his death by suicide. In their briefs counsel for each party have concurred in the statement that the case here should be determined upon the contract of indemnity. It is said in the brief of the defendant in error:

"We insist in the second place that the only dispute between the parties is as to the legal effect of admitted facts. . . . If the plaintiff's construction of the contract is the law, the defendant owed the plaintiff on the death of Andrew Nelson, on compliance by her with the conditions of the policy, $2000 upon a contract obligation. If, under the law, the defendant's contention as to what constituted the contract is correct, the defendant owed plaintiff, according to the terms of the contract as contended for by it, $768. In neither event could there be any dispute as to the amount of the obligation."

We fully agree with counsel in their statement of the status of the case here, and that the contract itself under the admitted facts is determinative of our decision. We shall therefore ignore the detailed specifications of error, by which practically the same question is repeatedly raised, and shall proceed to the discussion and ·

determination of the rights of the parties under the contract.

In the application of Andrew Nelson for admission to the order and for the contract of endowment occurs the following:

"I hereby declare that the above are fair and true answers to the foregoing questions, and I hereby agree that these statements, in the application and the laws of the supreme tent of the Knights of the Maccabees of the World, now in force or that may hereafter be adopted, shall form the basis of this contract of endowment. . . . This application and the laws of the supreme tent now in force, or that may hereafter be adopted, are made a part of the contract between myself and the supreme tent, and I, for myself and my beneficiary or beneficiaries, agree to conform to and be governed thereby."

The portion of the certificate material in this consideration reads:

"This certifies that Sir Knight Andrew Nelson has been regularly admitted in and is recognized as a member in good standing of Atchison tent, No. 2, located at Atchison, Kan., and that in accordance with, and under the provisions of, the laws governing the order his legal beneficiary named herein is entitled to receive one assessment on the membership, but not exceeding in amount the sum of $2000, and the said sum will be paid as a benefit to Anna Nelson, his wife, upon satisfactory proof of his death, together with the surrender of this certificate, provided he shall have in every particular complied with the laws, rules and regulations of the order governing members and their beneficiaries which are now in force, or may hereafter be adopted by the supreme tent, or the subordinate tent to which he belongs, and has not obtained his membership by fraud or misrepresentation as to his age, physical condition, or occupation when admitted to membership."

Section 183 of the by-laws of the association, which was in force at the time the certificate was issued to Nelson, provides among other things the following:

"But no benefit shall be payable on account of the death of any member while engaged in a mob, . . .

or by reason of death the result of suicide within two years after admission."

In May, 1895, a new by-law was adopted in lieu of, or as an amendment to, the foregoing, which latter section contains the following provision, among others:

"And no benefit shall be paid on account of the death or disability of any member while engaged in a mob, . . . or when death was the result of suicide within one year after admission, whether the member so taking his own life was sane or insane at the time."

In August, 1901, the association again amended its by-laws and adopted the following section relating to suicide, which section was in force up to the time of the death of Nelson and the trial of the case:

"No benefits shall be paid on account of the death of a member when death was the result of suicide, whether the member taking his own life was sane or insane at the time; provided, that in case of suicide twice the amount of all assessments or month rates paid to the supreme tent by such member shall be paid back to the beneficiary named in the certificate, or to the person found to be entitled to receive the same, which amount shall not exceed the face of the certificate, and such amount shall be the full amount that can be claimed in any such case."

It is contended on the part of the association that the payment of the benefit is governed by the by-law adopted in 1901, which was in force at the time of Nelson's death. On the other hand, Mrs. Nelson contends that the by-law in force at the time the certificate issued was a part of the contract, and that the association could not, without the personal consent of Nelson, change the contract to his prejudice or the prejudice of his beneficiary. An imposing array of authorities is cited in support of each of these propositions, but the question is hardly an open one in this court. In *Miller v. National Council,* 69 Kan. 234, 76 Pac. 831, Mr. Justice Greene, in a case relating to the change of the rate of monthly assessments, said:

"The important question in this case is, Did the asso-

ciation, with the consent of plaintiff, reserve the power so to alter or amend its by-laws subsequently to the issuance of plaintiff's certificate as to increase the amount of his monthly assessments? The plaintiff's certificate is not his entire contract, and therefore not determinative of his rights and duties; it is not complete in itself. Some of the conditions and agreements which make his contract must be looked for elsewhere. The certificate does not contain a statement of what his rate of assessment is nor when it shall be paid. To supply these omissions we must look to the by-laws of the association, his application, and certificate. . . . The condition in plaintiff's certificate that he should in every particular, while a member of the order, comply with all the laws, rules and requirements thereof was a consent on his part not only to comply with the laws then in force, but also to comply with all reasonable rules and regulations that might be made thereafter in the interests of the association. Every person joining an association obligates himself, without so expressing it, to conform to, and comply with, all its existing laws; and, if the provision in the plaintiff's certificate means anything, it is that he agreed to comply with all laws then in force or subsequently to be enacted by the national council." (Pages 239, 241.)

In that case, as in this, it was shown that the supreme body of the organization had power at its annual meetings to change the by-laws of the association. The plaintiff attempts to discriminate between the Miller case and the case at bar, and says that the provision in the policy requiring the member to comply with all the reasonable rules and regulations of the association applies to the question decided in the Miller case, to wit, the power to increase the amount of the monthly assessments so far as reasonably necessary to enable the association to comply with its contracts, but does not apply to the present case, where the by-law undertakes to decrease the endowment to be paid upon the death of the member occurring by suicide after the lapse of more than two years. She cites, in support of this contention, *Court of Honor v. Updegraff*, 68 Kan. 474, 75 Pac. 477. In that case the constitution of the associa-

tion provided, in substance, that the order would not pay benefits of members who committed suicide, whether sane or insane, with specific exceptions; but in all cases not within the exceptions the amount of money contributed to the benefit fund by any such member was to be paid to the beneficiary out of the fund, in lieu of the benefit. Another section of the constitution of that order which was in force at the time the certificate was issued and at the date of the holder's death provided:

"After two years certificates of membership shall be incontestable for any cause except fraud, violation of the constitution or laws of this order, or failure to pay assessments for the benefit and general funds as provided by the laws." (Page 475.)

The decision in that case was, in effect, the determination of which of two conflicting constitutional provisions should govern; that is, whether the provision which rendered the certificate incontestable after two years was rendered inoperative by another provision relating to suicide. The court decided that the provision rendering the certificate incontestable after two years governed, and upheld the claim of the beneficiary.

The rule is that where a member of such an organization consents that he and his beneficiaries shall be governed by the laws, rules and regulations of the association in force and existing at the time the certificate issues, or which may be thereafter adopted, it is conclusive upon him and his beneficiaries as to all reasonable changes which may be made therein.

In *Ritter v. Mutual Life Insurance Co.*, 169 U. S. 139, 18 Sup. Ct. 300, 42 L. Ed. 693, it was held, in substance, that where an assured holding an ordinary policy of life-insurance comes to his death by suicide while sane, and there is no incontestable provision in the policy and no provision whatever in regard to suicide, the policy is issued upon the common expectancy of life, and if the insured by his own act attempts to hasten the maturity thereof the policy becomes void. The risk assumed by

the insurer is therein compared to the risk under a fire-insurance policy, where there is no provision relating to the effect of an assured destroying his own property by fire, in which case, of course, it is universally held that the contract of indemnity cannot be enforced. It was also said in the Ritter case that to allow an insured or his beneficiaries to recover an indemnity upon a death resulting from suicide is against public policy, and that, if a policy were written with the express provision that if the insured should come to his death by his own hand the insurer would pay the indemnity to his beneficiary or estate, the contract would probably be void as against public policy.

The question then for our determination is whether the change made in the by-laws of the association is a reasonable change. In 1892, when the certificate in this case was issued, the association expressly provided that it would not pay any indemnity in case the holder of the certificate came to his death by suicide within two years. In 1895, it is to be presumed, the association found it necessary and expedient to change the rules and to provide that no indemnity would be paid if the holder of the certificate came to his death by suicide within one year. Again, in 1901, the association found it expedient to change its by-laws and provided that no benefits should be paid on account of the death of a member when death was the result of suicide, but that in such a case it would pay the beneficiary twice the amount of all assessments or month rates paid to the supreme tent by the member, not exceeding the face of the certificate. This latter change accords with public policy in removing the inducement which a member might possibly have to benefit his beneficiary by his own suicide, and the provision to pay double the amount the association has received by reason of his membership and the issuance of the certificate does not seem to be unreasonable. While this provision of the by-law was not in existence at the time the member took out his certificate, or for a large portion of the time that he was

paying assessments according· to his contract, it must be held that by his contract he consented to all reasonable changes in the by-laws of the association.

It is right and reasonable that all life-insurance organizations should decline to contract for the payment of any indemnity where death results from suicide. The by-law adopted by this association, however, is, from a financial standpoint, more fair; it provides for the return of twice the amount the defendant has received.

The conclusion to. which we have arrived makes it unnecessary to. consider the objection made by Mrs. Nelson that the settlement was procured by fraud or unfair means, our conclusion being that she has already received more than the association was obliged to pay. If we should assume, as we do not, that the settlement was procured by unfair means, she is not prejudiced thereby.

The judgment of the trial court is reversed and the case is remanded, with instructions to enter judgment in favor of the defendant.