No. 19,581.

ROBERT T. MOORE and LILLIE MOORE, *Appellants*, v. THE LIFE & ANNUITY ASSOCIATION, *Appellee*.

OPINION ON REHEARING.

SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE — *Members Bound by Subsequent Changes in By-laws*. A fraternal beneficiary association in April, 1900, issued to a member a certificate with a provision that if it should remain in full force for twenty years it should then become paid up according to the laws of the association, and the holder should thereafter be relieved from further payments during his lifetime. In 1913, while the certificate was still in force, an amendment to the by-laws was made declaring that every beneficiary member should thereafter be deemed a life-paying member and required to continue the monthly payments as long as he lived. In an action against the association brought by such member to recover damages for the alleged repudiation of the contract by the adoption of the amendment it was shown that in his written application for membership it was agreed that it was made "subject to the charter, constitution and by-laws now enacted or may hereafter be enacted," and that the contract "shall be subject to all the limitations and requirements of the constitution and by-laws of said association, with amendments made or which may hereafter be made thereto," and that he would "conform to and be governed by the constitution, laws, rules, regulations and usages of the association now in force or which may hereafter be adopted." *Held*, following *Miller v. National Council*, 69 Kan. 234, 76

Pac. 830, that in order to determine the rights of the parties it is proper to look to the by-laws of the association and the application, and that so construing the contract the plaintiff is bound by the new law, there being no claim that it is not reasonable and necessary to the accomplishment of the purposes of the association.

2. SAME. Other by-laws of the defendant association considered, and held not to take the case out of the rule declared in *Miller v. National Council,* supra.

Appeal from McPherson district court; FRANK F. PRIGG, judge. Opinion on rehearing overruling original opinion filed May 8, 1915. Affirmed. (For original opinion of reversal see 93 Kan. 398.)

. *Alex. S. Hendry,* of McPherson, for the appellants.
*Stephen H. Allen, Otis S. Allen,* both of Topeka, and *A. R. Lamb,* of Coffeyville, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This is an action to recover damages for the alleged breach of a contract of insurance. The trial court sustained a demurrer to the evidence and rendered judgment for defendant, from which the plaintiffs appealed.

The judgment was reversed and a new trial ordered. (*Moore v. Annuity Association,* 93 Kan. 398.) A rehearing was granted when it was found that the former opinion was based to some extent upon a misapprehension of one of the facts. It was stated in the opinion and in the syllabus that the plaintiffs, prior to beginning the action, had made a demand upon the defendant for a paid-up policy, which was not complied with. The petition alleged in express terms that on a certain date this demand was made of the defendant, but there was no proof offered to show such a demand. The case has now been reargued upon the whole merits and the court has reached the conclusion that its former

decision is wrong and that the judgment of the trial court must be affirmed. A brief statement of the facts will be necessary to understand the grounds for the decision.

The defendant is a fraternal beneficiary association organized under the laws of this state. It has a lodge system with ritualistic form of work and issues certificates for payments of benefits to members in case of death or disability. The fund from which such benefits are paid, as well as the expenses of conducting the business, is derived from monthly dues paid by the members and the accumulations of interest thereon.

The plaintiffs are husband and wife, and in April, 1900, applied for admission to the order and for a beneficiary certificate for $1000. The certificate provided that upon the death of Robert T. Moore $1000 should be paid to Lillie C. Moore, his wife, and in the event of her death that sum should be paid to the husband. The rate of the monthly payments was fixed at $1.27. There was a provision that if the certificate should remain in full force for twenty years from date of first payment, it should then become paid-up according to the laws of the association and the holder should be relieved from any further payments and should thereafter be a senior member. The plaintiffs kept up the monthly payments from the time the certificate was first issued. Their cause of action is based upon an alleged repudiation of the contract by the adoption on July 23, 1913, of certain by-laws or amendments to the by-laws, which are as follows:

"Section 14. Every beneficiary member of this association shall be deemed a life-paying member, and shall make monthly payments as long as he lives.

"Section 15. Insofar as the laws of the state of Kansas or of any other state in which this association is licensed to do business may permit, any member who desires a paid-up certificate for any amount, not to exceed the face value of his certificate shall pay into the reserve fund such sum or sums as may be necessary

38—95 KAN.

together with his then share of the reserve fund at net single premium rates at his then attained age, to purchase such paid-up insurance. No paid-up certificate shall be otherwise issued; and no claim shall lie against the association under any certificate after the discontinuation of payments, unless the foregoing provision has been complied with.

"Section 19. The National Fraternal Congress Tables of Mortality and 4 per cent interest shall be the basis of computation for said paid-up rates and surrender values provided for above."

The members of the association were notified by circular letter of the adoption of these by-laws, and the letter informed them that they might accept any one of four propositions submitted: (1) To continue the payments during membership at the same rate as before, which meant that the certificate in this case would not necessarily mature at the end of the twenty-year period, but that the plaintiffs should continue making monthly payments until the death of one of them. (2) To pay a monthly sum for the remainder of twenty years from the date of the first payment and then receive a paid-up certificate. (3) They might pay a lump sum for a paid-up certificate, and if they desired to accept this proposition the association would make a loan from the reserve fund of a sum sufficient to pay for such paid-up certificate upon the execution of a loan agreement, which would be a charge against the certificate.

The notice to the members of the association contained this further provision:

"If you fail to designate, before December 1, 1913, which of the foregoing propositions you will accept, you will be deemed to have accepted proposition No. 1 and your payments from that time will only be accepted as being paid under that agreement."

It was alleged in the answer:

"Under the terms of said contract of insurance defendant had the right to change the rates charged the plaintiff as stated on the face of his certificate. That the rate so charged as stated on the face of said

certificate, that is, $1.27 per month, was inadequate and insufficient to provide a fund which would mature said certificate according to its terms and within twenty years from date of first payment, and it became neces-sary to raise said rate charged plaintiff and all other members holding similar certificates, and in accordance therewith a special session of the National Council of said association, which is the supreme governing body of said association, was duly and regularly called and held on the 23rd of July, 1913, for the purpose among other things of raising the rates of payment to be made by plaintiff and other members who held similiar cer-tificates and paid inadequate rates. That said National Council at said session passed by-laws which are hereto attached marked 'Exhibit A' and made a part of this answer. That by said by-laws it was provided that any member of the association might have a paid-up cer-tificate issued to him upon the payment by him of a sum or sums which together with his share of the re-serve fund of the association at the time of the appli-cation for said paid-up certificate would be sufficient to pay for said certificate. That in computing said sum to be paid the Fraternal Congress tables and four per cent interest were to be used."

The district court in sustaining the demurrer held that if the provision for a paid-up policy was valid the plaintiffs had no right to recover. If invalid, they should continue to make payments to the end of the twenty-year period, and they would then have a right to bring an action to compel the association to issue them a paid-up policy, and that in either view the plain-tiffs had not shown that they had sustained any dam-ages at the time of the trial.

Another contention urged by the defendant is that the plaintiffs can maintain no action against it for damages because the association has no power to take from the reserve fund a sum of money to pay a judg-ment for damages for a breach of contract except for refusal to pay a certificate that has matured; that the benefit and reserve fund is set apart by the by-laws of the association, to be held sacred for the purpose for

.which they are created, and that no part of these funds can be used for any other purpose. In support of this contention authorities are cited holding that a member of a fraternal beneficiary association. who has been expelled from membership unlawfully can not maintain an action for damages; that he is restricted to one remedy, and that is to compel the association to restore him to membership, and some of the cases cited give as one reason why such an action can not be maintained, the fact that the society has no fund which can be applied in satisfaction of a judgment based upon a wrongful or tortious act of the association. (*Lavalle v. Societe Saint Jean Baptiste,* 17 R. I. 680, 24 N. E. 467.)

In the view which the court has taken of the case it will be unnecessary to determine whether or not an action can be maintained against such an association for damages for a wrongful act.

The defendant association has, it seems, met with the common experience of similar associations which have started out with a plan providing for a level rate of assessment, and has found at last that the rates originally fixed are inadequate; that if some plan is not adopted to permit the association to collect a higher rate there is bound to come a time when it can no longer meet its obligations and will be compelled to quit business. It is argued that if it be held "that the adoption of a by-law raising rates was a repudiation of the members' contract, then an association would be put between the two equally disastrous alternatives of attempting to do business on rates which had been found to be inadequate to meet its obligations, and inviting earlier ruin by suits for damages for breach of contract in raising its rates."

Benefit certificates issued by fraternal associations are given the same construction as any contract of insurance. (*Endowment and Benevolent Association v. The State,* 35 Kan. 253, 10 Pac. 272; *Mayes v. Knights*

& *Ladies of Security*, 92 Kan. 841, 846, 142 Pac. 290.) And it must be manifest that the courts in construing such contracts must disregard the probable hardship to the association in attempting to carry out inadequate plans, and will not take into consideration the disasters that may happen to associations of this character because of their having entered into contracts which they are unable to perform.

At the time the plaintiffs became members of the association and the certificate in question was issued they signed a written application for membership and for the contract. The application declared that:

"Subject to the Charter, Constitution and by-laws now enacted or may hereafter be enacted, I hereby make application for beneficial membership in local council No. —, and if accepted direct that a joint certificate for $1,000 be made payable to," etc.

It contained further the following recital:

"I also agree that all the foregoing statements and answers, as well as those I make, or shall make, to the medical examiner in continuance of this application are by me warranted to be true, and are offered to The Life & Annuity Association as the basis of the contract between me and the Association, *which shall be subject to all the limitations and requirements of the constitution and by-laws of said Association, with amendments made or which may hereafter be made thereto.*" (Italics ours.)

It further recited:

"I agree to conform to and be governed by the Constitution, laws, rules, regulations and usages of the Association now in force or which may hereafter be adopted."

Upon this application the benefit certificate in question here was issued. On the back of it there was printed the following:

"If this certificate shall remain in full force for twenty years from date of first paymant, it shall at that date become paid up according to the laws of the

association. The holder thereof shall be relieved from any further payments and shall thereafter be a senior member."

It appears, therefore, that the application expressly declares that the contract between the plaintiff and the association "shall be subject to all the limitations and requirements of the constitution and by-laws of said association, with amendments made or which may hereafter be made thereto."

It was held in *Miller v. National Council,* 69 Kan. 234, 76 Pac. 830, a case involving the same principle as this, that the certificate itself is not the entire contract; that in order to determine the rights of parties it was proper to look to the by-laws of the association and the application for the membership and insurance as well as the certificate, and it was ruled that:

"Where the certificate and by-laws make it apparent that the member agreed to be bound by subsequently enacted by-laws, he is bound by a new law which changes and increases his rate of monthly assessments, if it be reasonable and necessary to the accomplishment of the purposes of the association." (Syl. ¶ 1.)

In the opinion it was said:

"The condition in plaintiff's certificate that he should in every particular, while a member of the order comply with all the laws, rules and requirements thereof was a consent on his part not only to comply with the laws then in force, but also to comply with all reasonable rules and regulations that might be made thereafter in the interests of the association. Every person joining an association obligates himself, without so expressing it, to conform to, and comply with, all its existing laws; and, if the provision in the plaintiff's certificate means anything, it is that he agreed to comply with all laws then in force or subsequently to be enacted by the national council." (p. 241.)

The plaintiff in that case was a level-rate member. The action there was to compel the association to accept from the plaintiff, in full payment of his assessment, the amount of the original assessment prior to

the increase. This case has been followed and approved in *Maccabees v. Nelson*, 77 Kan. 629, 95 Pac. 1052, where it was said, in substance, in the opinion, that the question is no longer an open one in this court. It was further said in the opinion:

"The rule is that where a member of such an organization consents that he and his beneficiaries shall be governed by the laws, rules and regulations of the association in force and existing at the time the certificate issues, or which may be thereafter adopted, it is conclusive upon him and his beneficiaries as to all reasonable changes which may be made therein." (p. 635.)

We think, beyond any question, that the principle of these cases controls and that the plaintiffs are concluded by the provisions of the amendments to the by-laws. The answer shows that the amendments were adopted after a full consideration by the national congress; that the experience of the association showed that the rates charged members in the same class as that to which plaintiffs belong were inadequate and insufficient to provide a fund which would justify the issuing of a paid-up certificate for the face value at the end of twenty years from the date of first payment, and that the new rates were based upon the tables of mortality fixed by the National Fraternal Congress, with four per cent interest thereon, and, besides, the plaintiffs do not base their cause of action upon the ground that the changes were not reasonable and necessary.

There is a contention on the part of the plaintiffs that by-law No. 12, which was in force at the time the certificate was issued, contains an express provision that the rate can not be changed. It expressly relates to the powers of the board of directors, and reads:

"They shall perform all that the National Council might perform, except they can not legislate, alter or amend this Constitution, but whenever it is in their judgment to the best interests of the association, they may reduce the age at which one may join; may change the rate or form of the beneficiary certificate; may

raise or lower the rate at which money may be loaned. However, no change that is made in rates shall affect beneficiary certificate before said change is made."

This is difficult to translate, and we confess our inability to discover just what was intended by the proviso that "no change that is made in rates shall affect beneficiary certificate before said change is made." If we assume that the word "issued" was by mistake omitted, and that it should be read in following the word "certificate," the meaning would be plain, and it would then be clear that it was intended that no change in rate should affect a "certificate *issued* before" the change. There are two reasons which compel the conclusion that, however this by-law should be construed, it can not affect the rights of the parties. There is a statement in plaintiffs' abstract that the board of directors adopted new by-laws in 1910 and repealed all laws or parts of laws inconsistent with those adopted. The contract of the plaintiffs with the association was, as we have seen, made "subject to all the limitations and requirements of the constitution and by-laws . . . with amendments made or which may hereafter be made thereto." By-law No. 12 was repealed long before the change in the rate of which plaintiffs complain. Another reason is that, if we concede the proper construction of the language of by-law No. 12 to be substantially what plaintiffs claim, it was a rule limiting only the powers of the board of directors, while the changes of 1913, which plaintiffs contend amount to a repudiation of their contract, were adopted by the national council; not by the board of directors, but by the supreme governing body of the order called together for the purpose of raising the rates to be paid by the plaintiffs and other members whose rates were found inadequate. Some reliance, too, is attempted to be placed upon by-law No. 26, which reads as follows:

"Applications for decrease of insurance or change of beneficiary must be made on form found on back of certificate with amount, full name, residence and rela-

Moore v. Annuity Association.

tionship of beneficiary plainly written . or printed therein, signed by the local secretary. Forwarding certificate to the National Secretary with a fee of 50 cents and a new certificate will be issued bearing the same date and rate as former certificate. Providing, however, the conditions as specified in former certificate to be invalid at 12 o'clock noon on the day on which new certificate is issued."

This we understand to be nothing more than a provision that where a new certificate is issued to take the place of an older one because of a desire to have the amount of the insurance decreased, or because of a change of beneficiary, a new certificate shall be issued which shall bear the same rate that controlled the former certificate. If the rate under the former had been changed by the adoption of subsequent amendments to the laws, the new certificate issued to take its place would necessarily be subject to the increased or changed rates, and this would be true whether it so stated or simply followed the language of the original certificate. We find nothing in either by-law 12 or 26 which, in our opinion, takes the case out of the rule declared in *Miller v. National Council*, 69 Kan. 234, 76 Pac. 830.

For that reason the former decision (93 Kan. 398) must be overruled and the judgment of the district court affirmed.