No. 19,939.

## LEONARD C. UHL, *Appellee*, v. THE LIFE & ANNUITY ASSOCIATION, *Appellant*.

### SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE — *Amendments to Laws — Must be Fair and Reasonable.* Where a member of a fraternal beneficiary society agrees to be bound by future amendments to its laws a reservation is implied that the changes are to be fair and reasonable.

2. SAME. In order to be deemed necessary to the purposes of a fraternal beneficiary society a change in its by-laws need not be indispensable to that end. If it is reasonably adapted thereto the requirement is met.

3. SAME—*Changes in By-laws—Reasonableness for Court.* Whether changes made in the by-laws which affect the rights of a member in such an association are fair and reasonable is ordinarily a question of law, where the detailed facts are not in controversy.

4. SAME. The rates of a fraternal beneficiary society as fixed by a change in the by-laws held not to be unreasonably high.

5. SAME—*Change in By-laws—Beneficiary Entitled to Paid-up Certificate.* Where the certificate held by a member of a fraternal beneficiary society provides that after a certain time it shall be nonforfeitable, and that he shall be entitled to a paid-up certificate in proportion to the number of payments he has made, a change is unreasonable which denies him, unless he shall make further payments, any benefit whatever from his admitted present share of a reserve fund which has already accumulated.

Appeal from Smith district court; RICHARD M. PICKLER, judge. Opinion filed March 11, 1916. Reversed.

*A. R. Lamb,* of Coffeyville, and *Otis S. Allen,* of Topeka, for the appellant.

*L. C. Uhl, L. C. Uhl, jr., E. S. Rice,* and *A. W. Relihan,* all of Smith Center, for the appellee.

The opinion of the court was delivered by

MASON, J.: Leonard C. Uhl held a certificate in the Life & Annuity Association of Hiawatha, Kan., issued March 30, 1898. The association by a change in its by-laws made July 23, 1913, undertook to readjust rates and benefits, and notified him in November of that year of a number of options that

were open to him under the new rules.  He declined to accept any of them and brought an action for damages on account of a breach of the contract.  He recovered a judgment and the association appeals.

(1) The plaintiff in his application for membership agreed that his contract should be subject to future amendments in the laws of the association.  It is, however, an implied condition of such an agreement that the changes shall be reasonable.  (29 Cyc. 75; Niblack, Benefit Societies and Accident Insurance, 2d ed., §25; Bacon, Benefit Societies and Life Insurance, 2d ed., § 91a; Note, 8 L. R. A., n. s., 521.)

(2) It has already been determined that the contract between the plaintiff and the defendant was such as to permit the association to make the very changes here involved, provided they were reasonable and necessary to the accomplishment of its purposes.  (*Moore v. Annuity Association,* 95 Kan. 591, 148 Pac. 981.  Recent cases illustrating the conflict of authority on the subject are collected in a note to *Thomas v. Knights of Maccabees,* 85 Wash. 665, 149 Pac. 7, in L. R. A. 1916 A, 762.)  "Necessary" is a word the force of which depends upon the context.  (*M'Culloch v. Maryland,* 17 U. S. 316, 414.)  Here it is not used as the equivalent of "indispensable." If some change in the association's methods was required to enable it to continue business, and while acting in good faith it effected a readjustment by means reasonably adapted to the end sought, its action must be regarded as necessary, although some other plan might also have been available.  The requirement that a change in the rules shall be reasonable fairly implies that it shall be necessary in this sense, so that the former decisions of this court may be said to have determined that under its contract with the plaintiff the defendant had authority to make the changes in its by-laws now in controversy, provided they were reasonable.

(3) Here the court submitted to the jury the question whether the changes made were reasonable, in the sense indicated, and a negative answer was returned.  By the original terms of the plaintiff's certificate the sum of $2000 was to be paid at his death to the beneficiary named; he was to pay $2.80 a month for twenty years, at which time his payments were to end; he had the right, after three years, to cease payment and

receive a paid-up certificate for as many twentieths of $2000 as he had made annual payments. By the changes in the laws referred to, as interpreted by the association and applied to the plaintiff's situation, he was required to submit to an increase either in the amount of each monthly payment, or in the period for which they were to be made, as to which he was offered an election. If the original amount of monthly payment were unchanged he was required to continue such payments so long as he should remain a member. If payments were to stop, as originally contemplated, at the end of twenty years, the amount of the monthly payment was to be increased from $2.80 to $20.78. Several other options, the details of which are not now important, were offered him. Of the monthly payment of $2.80 provided by the original plan, thirty cents went to the local secretary, twenty cents into the expense fund of the association, and the remaining $2.30 into the reserve fund, which was set apart for the payment of certificates as deaths should occur.

The evidence upon the question of the reasonableness of the changes that were made was meager. It was shown that the defendant had advertised that it had the "largest per capita of any fraternal organization in the United States," a statement which had at one time been true, but was no longer so. This could be of little or no weight in determining the question. The secretary of the association, called as a witness by the plaintiff, testified that at the time of the change in the by-laws the plaintiff's share of the reserve fund (taking account of interest earned on the one hand and losses paid on the other) was about $280. No effort was made to controvert this. The defendant used the deposition of the actuary upon whose computations the changes had been based. He stated that the rates in force prior to the change were grossly inadequate to mature the certificates in twenty years. He computed the plaintiff's exact proportion of the reserve fund to be $278.65. Making allowance for this, he estimated the amount necessary to be collected each month until the end of the original twenty-year period, to justify the association in issuing a paid-up certificate, to be $20.78, the figures adopted by the association. His estimates were based upon the National Fraternal Congress table of mortality, and an assumption that the reserve

fund would yield four per cent interest. On March 19, 1913, a statute took effect authorizing fraternal beneciary societies to issue paid-up certificates, provided they maintained the reserve required by the American experience table of mortality, or by that of the National Fraternal Congress, and an assumption of interest not over four per cent. (Laws 1913, ch. 211, § 1.) Inferentially the statute forbids, for the future at least, paid-up certificates to be issued upon any more optimistic basis, and recognizes the reasonableness of the two tables referred to, and of the rate of interest adopted in the computation.

There was really nothing before the jury upon which they could determine that the changes made in the by-laws were unreasonable. The amount in the reserve fund for which the plaintiff was given credit was presumably correct, and even if it were wrong there was nothing in the evidence by which the mistake could be rectified. The mortality tables and assumption of interest adopted by the actuary were not open to objection, for they had received the approval of the legislature. His actual computation was hardly reviewable by the jury, for its details were not developed, nor is any error in the result now pointed out. Where the detailed facts are admitted or established the question whether a change in the by-laws is reasonable is seldom referable to a jury. (*Clarkson v. Supreme Lodge, K. of P.*, 99 S. Car. 134, 82 S. E. 1043.) "Whether a by-law is reasonable and consistent with the law, is a question solely for the court to determine." (Niblack, Benefit Societies and Accident Insurance, 2d ed., § 23, p. 45.) It is usual for the courts to declare that a particular change is or is not obnoxious to the rule imposing the test of reasonableness and fairness. (See, for example, *Maccabees v. Nelson*, 77 Kan. 629, 95 Pac. 1052; *Conner v. Golden Cross*, 117 Tenn. 549, 97 S. W. 306; *Wuerfler v. Trustees Grand Grove W. O. D.*, 116 Wis. 19, 92 N. W. 433. See, also, *Loan Association v. Merriman*, 67 Kan. 779, 74 Pac. 256.) Such examination as has been found practicable has failed to discover an instance of that question having been determined by a jury, and but one—a dictum—in which that has been referred to as the proper practice. (*Supreme Lodge, etc., v. Bieler*, 58 Ind. App. 550, 105 N. E. 244.) In view of the situation pre-

sented, the reasonableness of the new rates was not a question of fact to be determined by the jury, but one of law to be decided by the court.

(4) Upon the showing made it does not appear that the new by-laws were unreasonable. It is quite clear that the association had issued certificates containing provisions more favorable to the beneficiaries than it could carry out. Under the original arrangement it undertook to pay $2000 at the time of plaintiff's death, from a fund to which he could have contributed no more than $552, and his expectancy when he became a member was but a little over twenty years. Some change of rates or benefits was obviously necessary. If in 1913 the plaintiff, being then 67 years of age, had elected to continue the monthly payment for life ($2.30 going into the reserve fund), and had died at the expiration of his then expectancy of about eleven years, his additional contribution to the fund would have been but $303.60. No detailed computation is necessary to show that this proposition was not open to objection as requiring too many or too large payments. If he had elected to pay at the monthly rate of $20.78 ($20.28 going to the fund) for the remaining fifty-one months of the original twenty-year period his additional contribution would have been $1034.28, which added to the $278.65 already to his credit would make $1312.93. According to the calculations of the actuary, to which no definite objection is made, this is the amount necessary, giving it an earning capacity of four per cent, to justify the association's undertaking to pay $2000 on the death of the plaintiff. In view of the statute enacted just before the readjustment of rates, recognizing the mortality tables of the National Fraternal Congress, and authorizing the issuance of paid-up certificates only on the basis of a maximum rate of interest of four per cent, the rate of $20.78 per month can not be regarded as unreasonable. It results from these conclusions that the change made in the defendant's by-laws were valid, and the plaintiff's contentions must fail so far as they turn upon that question.

(5) It is said that "any amendment which entirely changes the scheme of insurance, and makes a radical departure from the fundamental plan, is not a reasonable exercise of the reserved power of amendment." (Niblack, Benefit Societies

and Accident Insurance, 2d ed., § 25.)   The plaintiff's original
contract provided that he might cease payments at the end of
any year and receive a paid-up certificate proportioned to the
payments he had made.   The association doubtless had the
power in case of necessity to change the rule by which the
amount of the paid-up certificate should be determined, but
not to deprive the plaintiff of this right wholly and unneces-
sarily.   The new by-laws are consistent with the preservation
of the right in a modified form.   They provide that "any
member who desires a paid-up certificate for *any amount,* not
to exceed the face value of his certificate, shall pay into the
reserve fund such sum, or sums, as may be necessary together
with his then share of the reserve fund . . . to purchase
such paid-up insurance."   This clearly implies that without
any additional payment the member might have a paid-up
certificate for whatever amount would correspond to his then
share of the reserve fund.   This much of the money on hand
equitably belonged to him.   It had already borne all the charges
legitimately made against it on account of accruing losses,
and the association had no right to look to it in order to meet
other obligations it had undertaken.   But the defendant re-
quired the plaintiff to accept one of five proposals made to him,
none of which enabled him, in case he should make no further
payment, to receive anything whatever in compensation for
the amount that had already accumulated in the reserve fund
to his credit.   It is true he made no demand for an adjust-
ment on the basis of what he had already paid in without
further payment, but this circumstance could not work a for-
feiture of his right in that regard.   The association by a formal
official notice advised him of just what privileges would be
accorded him, and required him to elect between the proposals
submitted, stating that unless he indicated a choice by a date
named he would be deemed to have accepted the one which con-
templated a payment of $2.80 a month during his membership.

Inasmuch as the question of the issuance of a paid-up cer-
tificate for the amount corresponding to the plaintiff's share
of the reserve fund seems not to have been directly referred
to in the negotiation between the parties, the cause will be
remanded with directions to enter judgment for the defendant,

provided it issues to the plaintiff such a certificate within thirty days after the mandate is spread of record in the district court; otherwise the cause may proceed as an action for the refusal to do so.